**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION**

*JURY TRIAL DEMANDED*

**NAKIA MCCOURRY**
13 Oak Tree Lane
Elkton, Maryland 21921

and

**KENNY BEDWELL**
13 Oak Tree Lane
Elkton, Maryland 21921

and

**DENNIS BEDWELL**
412 Stoney Run Creek Road
Elkton, Maryland 21921

and

**LISA LUCAS**
181 Hollingsworth Manor
Elkton, Maryland 21921

and

**GLADYS MEDINA**
182 Hollingsworth Manor
Elkton, Maryland 21921

*Plaintiffs*,

v.

**TOWN OF ELKTON, MARYLAND**
100 Railroad Way
Elkton, Maryland 21921

and

**THE COMMISSIONERS OF THE TOWN OF ELKTON, MARYLAND, CHARLES GIVENS, MARY JABLONSKI EARL PINER, AND CHARLES HICKS,**
*Individually and as Commissioners of the Town of Elkton*
100 Railroad Way
Elkton, Maryland 21921

* * * * * * * * * * * * * * * * * * * * * * * * *

and *

**JOSEPH FISONA,** *
*Individually and as Mayor of the*
*Town of Elkton, Maryland* *
100 Railroad Way
Elkton, Maryland 21921 *

and *

**WILLIAM RYAN,** *
*Individually and as Chief of*
*the Elkton Police Department* *
100 Railroad Way
Elkton, Maryland 21921 *

and *

**JOHN AND JANE DOES 1-20,** *
*Individually and as currently*
*unknown Police Officers,* *
Elkton Police Department
100 Railroad Way *
Elkton, Maryland 21921
*
and
*
**RICHARD AND JANE ROES 1-20**
*Individually and as currently unknown* *
*supervisors of John and Jane Does 1-20,*
Elkton Police Department *
100 Railroad Way
Elkton, Maryland 21921 *

and *

**THE CECIL COUNTY SPCA, INC.** *
3280 Augustine Herman Highway
Chesapeake City, Maryland 21915 *

and *

**JEAN DEEMING,** *
Director of the Cecil County SPCA
3280 Augustine Herman Highway *
Chesapeake City, Maryland 21915

and *

**JERRY HAWKINS**, *
Head Animal Control Officer for
The Cecil County SPCA *
3280 Augustine Herman Highway
Chesapeake City, Maryland 21915 *

*Defendants*. * Case Number: ____________________

* * * * * * * * * * * * * * * * *

**COMPLAINT**

## *INTRODUCTION & NATURE OF THE ACTION*

*When a dog bites a man, that is not news, because it happens so often.*

*But if a man bites a dog, that is news.*

- attributed to *New York Sun* editor
John B. Bogart (1848-1921)

1. It's become an increasingly common occurrence in Elkton, Maryland: a police or animal control officer shoots and kills a family pet without legal cause or justification. And, if the shooting is challenged by the owner, the Elkton Police Department and the Cecil County SPCA support their officers with fabricated justifications tailored out of half-truths and falsehoods.

2. This is why it wasn't too surprising when the Elkton Police Department dispatched two police officers that shot and killed Kenny Bedwell and Nakia McCourry's three-year-old pit bull, known as "Shiloh." What made this case particularly newsworthy, however, was that the police officers also shot their .45 Sig Sauer handguns multiple times at civilians without legal cause or justification, first, when they aimed at Shiloh from a distance of fifteen feet and Dennis Bedwell and Gladys Medina were in the line of fire, then again, from an additional five feet away after Dennis gathered Shiloh's lifeless body in his arms.

3. Nakia told the *Cecil Daily* that: "[Shiloh's] tail was wagging. One police officer called him over…and [Shiloh] sniffed his leg." Then, Dennis called Shiloh and he began walking to him - tail still wagging. Nakia continued: "I have a whole neighborhood that saw them shoot [Shiloh] for no reason. And then they shot Shiloh while [Dennis] was holding him…they didn't even give anybody a chance to move."

4. It also wasn't too surprising when Lieutenant Matt Donnelly of the Elkton Police Department gave the *Cecil Daily* a preposterous version of the events giving rise to the shooting. He admits that the dog that sniffed one of the responding police officers was "friendly." Then, in an attempt to justify the heinous acts of his subordinates, he invented the presence of a second dog that he claims was the dog that sniffed the police officer, not Shiloh. He further stated: "It is another situation where an officer is forced to make a split second decision and that was the decision that was made." The only problem with this self-justifying and implausible statement is that the police officers didn't make a split second decision and the

only thing *forcing* them to use their handguns were the unlawful municipal policies, customs, and/or patterns, and practices followed by Elkton Police Department and its personnel.

5. In Elkton, animal care and control is run by the Cecil County SPCA. Pursuant to the procedures of the Elkton Police Department and the Cecil County SPCA's contract with the Board of County Commissioners of Cecil County, the Elkton Police Department *may* notify the Cecil County SPCA if there is an emergency, which triggers the Cecil County SPCA to promptly dispatch an animal control officer to the scene. The Cecil County Code additionally requires the Cecil County SPCA to consider and set forth policy in relation to emergencies. In the absence of any policy or directive from the Elkton Police Department forbidding police officers from personally addressing concerns about residents' pets in non-emergency situations, the policy of the Cecil County SPCA has been adopted of shooting friendly family pets without legal cause or justification. And, unfortunately, many of the police officers seem to have joined the Cecil County SPCA and its animal control officers in what appears to be a sadistic enjoyment of the brutal spectacle of shooting domestic animals.

6. The news media in Cecil County has recently reported horrific stories about friendly domesticated animals that have been needlessly shot and killed by the Cecil County SPCA. In many instances, as expected, the *modus operandi* of the animal control officers matches the *modus operandi* of the police officers of the Elkton Police Department, and *vice versa*. One recent story involved the head animal control officer, Jerry Hawkins, abusively dragging a dog from its kennel on a catch pole. According to former employees, Carl Ewing and Erin Miller, Jerry took the dog behind the animal care and control building and shot him through the chest with a handgun. Carl and Erin also witnessed other instances where this occurred. And after each of the shootings, Erin administered euthanasia drugs to the animals - still alive and still suffering.

7. Another story, this time witnessed by Carl's wife, Natasha Ewing, and corroborated by some young volunteers, involves Jerry putting food out for cats and then shooting them with his .22 rifle when they came to eat.

8. It was also reported that at a recent Cecil County Commissioner's meeting, numerous residents testified that animal control officers had shot their pets without legal cause or justification. An Elkton resident, Ruth Sargent, who lived within countable blocks Kenny and Nakia and likewise had a pit bull, recounted the story of how she and her children begged Jerry

not to shoot their friendly family pet as he was innocently running away from them in the direction of some woods. Regardless, Jerry shot the Sargents' pit bull multiple times – multiple times in front of the children.

9. As if shooting family pets without legal cause or justification isn't bad enough by itself, Jean Deeming, Director of the Cecil County SPCA, has made her desire to eradicate Cecil County of all pit bulls unmistakably clear to her animal control officers and the police officers with the Elkton Police Department. She frequently states: "*The only good pit bull is a dead pit bull!*"

10. Jean has instructed the Cecil County SPCA's animal control officers and the police officers with the Elkton Police Department to pay special attention to the opportunity to kill a pit bull. She condones the reckless shooting of friendly dogs in residential areas without legal cause or justification. And the Town of Elkton and the Elkton Police Department both implicitly and explicitly support their police officers that follow Jean's lead, even if it means shooting at civilians that are in the line of fire.

11. The Plaintiffs are seeking compensatory damages in the amount of five million dollars ($5,000,000.00), plus punitive damages. They believe that a jury will not only find that the Defendants, individually and in concert, deprived them of their property interest in their family pet by executing Shiloh in cold blood, but also that they acted intentionally, knowingly, recklessly, and/or with deliberate indifference and an utter disregard for the lives of the civilians around them.

12. The Plaintiffs deserve redress for the Defendants' acts that deprived them of their rights secured under federal law, including the United States Constitution, and the laws of the State of Maryland, including the Declaration of Rights. For the foregoing, but also because the Defendants refused to prevent such deprivations and denials, causing the Plaintiffs to needlessly suffer at the hands of the police officers that fired their handguns at Shiloh, Dennis, and Gladys, from which they will never fully recover.

13. Beyond compensating the Plaintiffs for the actions of the police officers, this Complaint seeks redress for the unlawful municipal policies, customs, and/or patterns, and practices followed by the police officers in violating the Plaintiffs' rights and interests giving rise to the extreme misconduct alleged in this Complaint. The municipal practices and policies of arbitrarily shooting and killing family pets without legal cause or justification and using

lethal force without regard for the safety of civilians shocks the conscience of a civilized society. The Defendants' actions were a raw abuse of governmental power and were done maliciously and sadistically for the purpose of causing harm.

14. Society is sickened by a child found tearing off the wings of a bird or burning a kitten. Society should be no less sickened when the same wanton cruelty is exercised in the name of the law. Very few people deny that there is a right to use force on those rare occasions when an animal threatens human life, but that right should not be used as a pretext for sickening and reckless behavior, as exhibited by the Defendants.

## *PARTIES*

### I. THE PLAINTIFFS

15. At all times herein pertinent, the Plaintiff, Nakia McCourry, is and was a resident of the State of Maryland and a citizen of the United States of America. She was also one of Shiloh's co-owners.

16. At all times herein pertinent, the Plaintiff, Kenny Bedwell, is and was a resident of the State of Maryland and a citizen of the United States of America. He was Shiloh's other co-owner.

17. At all times herein pertinent, the Plaintiff, Dennis Bedwell, is and was a resident of the State of Maryland and a citizen of the United States of America. He is also Kenny's brother.

18. At all times herein pertinent, the Plaintiff, Lisa Lucas, is and was a resident of the State of Maryland and a citizen of the United States of America. She is Gladys Medina's sister and, at the time of the incidents complained of herein, was Nakia and Kenny's neighbor.

19. At all times herein pertinent, the Plaintiff, Gladys Medina, is and was a resident of the State of Maryland and a citizen of the United States of America. She is Lisa's sister and, at the time of the incidents complained of herein, was Nakia and Kenny's neighbor.

### II. THE DEFENDANTS

#### A. THE TOWN OF ELKTON, MARYLAND

20. That at all times herein pertinent, the Defendant, the Town of Elkton, Maryland, was and is a township and political subdivision and/or a municipal corporation of the State of Maryland, duly organized and existing under the laws of the Maryland General Assembly (Chapter 31, Acts of 1787), with an address of 100 Railroad Way, Elkton, Maryland 21921. It

is charged with and responsible for the Elkton Police Department and for the supervision, training, instruction, discipline, control, and conduct of the Elkton Police Department and its personnel. At all relevant times hereto, the Town of Elkton had the power, right, and duty to control the manner in which the Elkton Police department and its personnel carried out the objectives of their employment and to see that all orders, rules, instructions, and regulations promulgated for the Elkton Police Department and its personnel were consistent with the State of Maryland and federal Constitutions, statutes, ordinances, regulations, customs, and usages of the State of Maryland and the Town of Elkton.

21. That at all times herein pertinent, the Defendants, the Commissioners of the Town of Elkton, Charles Givens, Mary Jablonski, Earl Piner, and Charles Hicks (*hereinafter,* the "Commissioners"), acted in their capacity as commissioners for the Town of Elkton, duly organized and existing under the laws of the State of Maryland, with an address of 100 Railroad Way, Elkton, Maryland 21921. They are charged with and responsible for appointing and promoting the members of the Elkton Police Department and for the supervision, training, instruction, discipline, control, and conduct of the Elkton Police Department and its personnel. At all relevant times hereto, the Commissioners had the power, right, and duty to control the manner in which the Elkton Police Department and its personnel carried out the objectives of their employment and to see that all orders, rules, instructions, and regulations promulgated for the Elkton Police Department were consistent with the State of Maryland and federal Constitutions, statutes, ordinances, regulations, customs, and usages of the State of Maryland and the Town of Elkton. All acts and omissions set forth herein this Complaint were within the scope of the Commissioners' employment and under the color of state law. Each of the Commissioners is being sued in their individual and official capacities.

21. That at all times herein pertinent, the Defendant, Joseph Fisona, is and was the Mayor of the Town of Elkton, and acted in his capacity as the Mayor for the Town of Elkton, duly organized and existing under the laws of the State of Maryland, with an address of 100 Railroad Way, Elkton, Maryland 21921. He is charged with and responsible for appointing and promoting the members of the Elkton Police Department and for the supervision, training, instruction, discipline, control, and conduct of the Elkton Police Department and its personnel. At all relevant times hereto, Joseph had the power, right, and duty to control the manner in which the Elkton Police Department carried out the objectives of their employment and to see

that all orders, rules, instructions, and regulations promulgated for the Elkton Police Department were consistent with the State of Maryland and federal Constitutions, statutes, ordinances, regulations, customs, and usages of the State of Maryland and the Town of Elkton. All acts and omissions set forth herein this Complaint were within the scope of Joseph's employment and under the color of state law. Joseph is being sued in his individual and official capacities.

### B. ELKTON POLICE DEPARTMENT DEFENDANTS

22. That at all times herein pertinent, the Defendant, William Ryan, was employed by the Town of Elkton and/or the Elkton Police Department as the Chief of Police, and in doing the things hereinafter alleged, was acting within the scope and course of his employment and under the color of the Town of Elkton's authority, as well as under the color of statutes, ordinances, regulations, customs, and usages of the State of Maryland and the Town of Elkton. He is and was responsible for supervising the training, instruction, discipline, control, and conduct of the Elkton Police Department's personnel, including the police officers named in this Complaint. He is and was also charged with promulgation of orders, rules, instructions, and regulations of the Elkton Police Department including, but not limited to, those orders, rules, instructions, and regulations concerning the use of force and of deadly weapons. He also had the authority to approve all weapons to be used by members of the Elkton Police Department. William is sued in his individual and official capacities.

23. That at all times herein pertinent, the Defendants, John and Jane Does 1-20, members of the Elkton Police Department, are being sued by fictitious names by virtue of the Plaintiffs' current ignorance as to their true names. John and Jane Does 1-20, police officers of the Elkton Police Department, were acting in such a capacity as agents, servants, and employees of the Town of Elkton and/or the Elkton Police Department, and pursuant to either official policy, or the custom, practice, and/or usage of the Town of Elkton and/or the Elkton Police Department. Additionally, at all times referred to herein, John and Jane Does 1-20 acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the Town of Elkton, and the Elkton Police Department, and pursuant to their authority as police officers of the Elkton Police Department. Defendants John and Jane Does 1-20 are being sued in their individual and official capacities.

24. That at all times herein pertinent, the Defendants, Richard and Jane Roes 1-20, supervisory officials of the Elkton Police Department and/or its personnel, are being sued by fictitious names by virtue of the Plaintiffs' current ignorance as to their true names. Richard and Jane Roes 1-20, supervisory officials, some within the Elkton Police Department, were acting in such a capacity as agents, servants, and employees of the Town of Elkton and/or the Elkton Police Department, and were acting under the direction and control of the Town of Elkton and/or the Elkton Police Department, and pursuant to either official policy, or the custom, practice, and/or usage of the Town of Elkton and/or the Elkton Police Department. Additionally, at all times referred to herein, Richard and Jane Roes 1-20 acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the Town of Elkton, and the Elkton Police Department, and pursuant to their authority as supervisors of the Elkton Police Department and/or its personnel. Defendants Richard and Jane Roes 1-20 are being sued in their individual and official capacities.

**III. THE CECIL COUNTY SPCA, INC.**

25. That at all times herein pertinent, the Defendant, the Cecil County SPCA, Inc., a Maryland corporation, was and is located at 3280 Augustine Herman Highway, Chesapeake City, Maryland 21915. It does and did have a contract with the Board of County Commissioners of Cecil County, which includes responsibility for animal control services in the Town of Elkton, including responding to all complaints with regard to at-large animals and/or animals causing a nuisance. And, if a call or complaint is received reporting an emergency, an animal control officer is to respond promptly. The Cecil County SPCA is additionally required to consider and set forth policies with regard to emergencies, which are defined by the Board of County Commissioners of Cecil County as: "involving a vicious or dangerous animal at large or a vicious or dangerous animal that has been trapped or contained on property other than the property of the owner of said animal, and said animal is causing a nuisance because of its presence on the premises where it is located."

26. That at all times herein pertinent, the Defendant, Jean Deeming, was employed by the Cecil County SPCA, and in doing the things hereinafter alleged, was acting within the scope and course of her employment as the Director of the Cecil County SPCA. She is and was responsible for supervising the training, instruction, discipline, control, and conduct of the Cecil County SPCA's personnel, including Jerry Hawkins. She is and was also charged with

promulgation of orders, rules, instructions, and regulations of the Cecil County SPCA including, but not limited to, those orders, rules, instructions, and regulations concerning the disposition of animals under the Cecil County SPCA's control and the procedures for emergency and non-emergency situations involving animals in Cecil County. Jean is sued in her individual and official capacities.

27. That at all times herein pertinent, the Defendant, Jerry Hawkins, was employed by the Cecil County SPCA, and in doing the things hereinafter alleged, was acting within the scope and course of his employment as the Head Animal Control Officer for the Cecil County SPCA. He was and is responsible for the collection and control of all animals in Cecil County that need to be captured and delivered to the Cecil County SPCA or otherwise need to be captured and/or contained. He also has the authority to write residents citations for violations of the Cecil County Code as it relates to animals. Jerry is sued in his individual and official capacities.

**JURISDICTION AND VENUE**

28. The Plaintiffs bring this lawsuit, which includes federal causes of action arising under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, for being subject to the deprivation of their rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, by the Town of Elkton, including the Elkton Police Department, and the Cecil County SPCA, and their agents, and/or employees acting under the color of law.

29. Under 42 U.S.C. § 1983, 28 U.S.C. § 1943, and 28 U.S.C. § 1331, the United States District Court has original jurisdiction over all civil actions arising under the United States Constitution, laws, or treatises of the United States, including 42 U.S.C. § 1983.

30. The Plaintiffs offer additional causes of action arising out of State of Maryland statutes and common law, including the Maryland Declaration of Rights.

31. Under 28 U.S.C. § 1367, the United States District Court has supplemental jurisdiction over all claims that are so related to claims in an action for which there is original jurisdiction that together they form part of the same case and controversy under Article III of the United States Constitution.

32. The Plaintiffs' State of Maryland statutory and common law claims are so related to their claims for which the United States District Court has original jurisdiction that together they form part of the same case and controversy.

33. Under 28 U.S.C. § 1391(b)(1) and (2), venue is appropriate in the United States District Court, Baltimore Division, because Baltimore is (1) a judicial district where at least one Defendant resides and all Defendants reside in the State of Maryland, and (2) it is the judicial district in which all the events and omissions giving rise to this Complaint occurred.

***PRE-SUIT REQUIREMENTS***

34. Although the Plaintiffs maintain that there is no applicable immunity for State of Maryland statutory or common law claims and/or those arising under federal law, including United States constitutional claims, this Complaint nonetheless complies with the Maryland Local Government Tort Claims Act (Maryland Code Annotated, *Courts and Judicial Proceedings*, §§ 5-301, *et seq*.). The Plaintiffs originally filed an action in the District Court for Cecil County on October 20, 2011 and, thereafter, on November 19, 2011, submitted notice of their claims via United States Postal Service certified mail, return receipt requested, postage prepaid, on November 19, 2011, to the Town of Elkton Administrator, Mayor of the Town of Elkton, the County Commissioners, and the County Attorney's Office. The Plaintiffs further asserts the Town of Elkton's good and sufficient actual and/or constructive prior notice of all claims.

35. The Plaintiffs' compliance with applicable notice requirements notwithstanding, they make no waiver of defenses against applicable notice requirements for any State of Maryland statutory or common law tort claim brought forth herein or for any claim arising under federal law.

***ALLEGATIONS COMMON TO ALL CLAIMS***

**I. THE PLAINTIFFS AND THE RESIDENCE**

36. Nakia McCourry and Kenny Bedwell (*hereinafter,* the "Family Plaintiffs") have been together for eight years and produced four wonderful kids, Mikaylah, seven-years-old, Dominick, four-years-old, Jaiden, four-years-old, and Brooklyn, newly born (*hereinafter,* the "Family"). At all times relevant hereto, the Family lived at 172 Hollingsworth Manor, Elkton, Maryland 21921 (*hereinafter,* the "Residence").

37. At all times relevant hereto, the Family Plaintiffs owned a three-year-old male pit bull, known as "Shiloh." The Family got Shiloh when he was only a few weeks old and most of the Family Plaintiffs' children remember their mother bottle feeding him. Shiloh was a companion pet and an important member of the Family. He never bit or attacked anyone and was known in the Family's community as a happy, warm hearted, loveable, and well trained family pet.

38. The Family has an uncle, Dennis Bedwell, a Plaintiff and Kenny's brother, that at all times relevant hereto, lived on a street adjacent to the Family's Residence.

39. At all times relevant hereto, the Family had two neighbors that are also Plaintiffs, sisters Lisa Lucas and Gladys Medina.

## II. THE ELKTON POLICE DEPARTMENT HAS A HISTORY OF DEPRIVING DENNIS OF HIS CIVIL RIGHTS, INCLUDING HIS RIGHT TO BE FREE FROM THE USE OF EXCESSIVE FORCE

40. The Elkton police department and its police officers have a history of intimidating Dennis and assaulting him without legal cause or justification.

41. On one such occasion, approximately a year prior to the incidents complained of herein, Dennis was at the Residence when six police officers with the Elkton Police Department threw him on the ground for no reason other than to send him the message that the Elkton Police Department and its personnel are more than willing to violate his constitutional rights and injure him whenever they so choose.

## III. THE ELKTON POLICE DEPARTMENT AND ITS POLICE OFFICERS CONSPIRED WITH THE CECIL COUNTY SPCA TO EXTERMINATE RESIDENTS' FAMILY PETS TO FULFILL A SADISTIC NEED FOR THE SPECTICAL OF SHOOTING DOMESTIC ANIMALS

42. It takes a sick person to kill a friendly domesticated animal without legal cause or justification – even sicker if they enjoy it. As set forth in the Plaintiffs' Introduction and Nature of the Action, the Elkton Police Department and its police officers have been conditioned by the Cecil County SPCA to believe that the way to address any concerns about friendly domesticated animals is to shoot them. This is especially true if the friendly domesticated animal happens to be a pit bull.

43. In the absence of any policies and procedures to the contrary, the Elkton Police Department and its police officers have conspired with the Cecil County SPCA and its animal control officers to kill friendly domestic animals.

44. In fact, police and animal control officers have driven around Elkton looking for pit bulls that are restrained behind a fence on residents' private property. They get out of their vehicle and do everything they can to agitate and provoke the animals. And, if they can get the dogs to jump the fence, they take aim and fire.

45. It is clear from the actions of the Cecil County SPCA that they not only have a predisposition against certain animals and breeds, but also, as evidenced by the horrific methods of killing domestic animals, sometimes with multiple bullets in front of children, certain animal control officers may be deriving some pleasure from it.

46. The actions of the police officers as described herein evidence the same sick gratification, maybe worse.

## IV. A NEIGHBOR'S DOG BROKE INTO THE FAMILY'S BACK YARD AND ATTACKED SHILOH

47. The incidents herein sued upon occurred on or about October 15, 2011, at, adjacent to, or by the Residence.

48. Shiloh was at the Residence awaiting the Family's return from work when a neighbor's dog broke through the fence surrounding the back yard. There was a minor scuffle upon entry when the neighbor's dog lunged at Shiloh. However, there was no harm or damage done to either dog.

49. The neighbor's dog returned home and was not seen again.

50. Lisa patched up the hole the other dog made in the Family's fence.

51. At some point during the scuffle, one of the neighbors called the Elkton Police Department to report the incident.

## V. POLICE OFFICERS WITH THE ELKTON POLICE DEPARTMENT FIRE THEIR .45 SIG SAUER HANDGUNS AT SHILOH, DENNIS, AND GLADYS WITHOUT LEGAL CAUSE OR JUSTIFICATION

52. Long after Shiloh and the neighbor's dog had been separated, two police officers from the Elkton Police Department responded to the Residence. Lisa began talking to the police officers in the street. During their conversation, Shiloh managed to get out of the

Family's back yard through the hole Lisa had patched up. He was wagging his tail as he was headed toward Dennis. While in route, John Doe 1 called him. He came. He then happily sniffed one of John Doe 1's pant-legs, never making contact.

53. Dennis was in the Family's front yard with Gladys. He called Shiloh. And Shiloh walked towards him, still wagging his tail. Then, with no warning or provocation, John Doe 2 took out has .45 Sig Sauer handgun and said "you better get your dog." Shiloh was now in the Family's front yard and still headed toward Dennis. Unfazed by Shiloh's friendly demeanor and the fact that Dennis and Gladys were in the line of fire, John Doe 2 began shooting at Shiloh. Then, John Doe 1 joined in.

54. After being hit multiple times from behind by the police officers' bullets, Shiloh collapsed in front of Dennis, squirting blood out of his front right leg. Dennis scooped him up in his arms. Onlookers gathered from the commotion. The police officers again drew their guns despite the pleas from the onlookers for them to put them down. The police officers fired – both of them - numerous shots. Shiloh was in Dennis' arms and Dennis felt every bullet that was fired.

55. The bullets were so close to directly contacting Dennis that if he had done something as insignificant as sneezing, his body could have shifted ever so slightly and he would likely have shared Shiloh's unfortunate fate.

56. When Shiloh was in Dennis' arms, Gladys was still in the line of fire and believed she would be the next target after the police officers finished shooting at Shiloh and Dennis or that they would miss and hit her.

## VI. THE ELKTON POLICE DEPARTMENT THREATENS DENNIS WITH ARREST AFTER SHOOTING AT HIM WITHOUT LEGAL CAUSE OR JUSTIFICATION

57. Dennis, now with blood all over his body and clothes, remained where the police officers shot at him. He was in shock and barely able to move.

58. The police officers' supervisor arrived and attempted to interrogate Dennis, who clearly had not only done nothing to justify being interrogated, but, even more importantly, was still visibly in shock.

59. Dennis explained to the supervisor that he had just been shot at and that he needed some time to collect himself.

60. The supervisor became aggressive and told Dennis that if he didn't tell him what he remembered, he would be arrested immediately.

61. As set forth above, this was not the first time that the Elkton Police Department had tried to intimidate Dennis by threatening him with arrest. In fact, Dennis was in approximately the same spot that he was standing a year prior when the six police officers intimidated him by throwing him down and threatening him with arrest.

62. Dennis got the message the last time – the Elkton Police Department would gladly hurt him without legal cause or justification. Dennis was still in shock and wondering if any of the bullets that hit Shiloh were intended for him. He also knew that even if they weren't, they never should have been fired and would have hit him if he had made any movement.

63. Still in shock and fearing for his life, Dennis told the supervisor what he remembered. Dennis' recollection of what transpired was thereafter incorporated into the series of half-truths and falsehoods told by the Elkton Police Department in an effort to excuse the unconscionable actions of its police officers.

## VII. THE AFTERMATH OF THE SHOOTING

64. The Family Plaintiffs' children eventually came home. Dennis, still soaked in blood, was on the back porch with a very dead Shiloh. Despite his best efforts to remove the horrific sight of the executed family pet from the children's view, Jaiden managed to see Dennis and Shiloh. And after crying for days, Jaiden named his new stuffed dog he had gotten a few days before, Shiloh. He and the other children still cry almost daily over the loss of Shiloh. He was an exceptional animal that should not have been taken from the Family and certainly not in the sick and malicious manner in which he was.

65. Dennis gave into the supervisor's threats of arrest and was not arrested that day. However, after being shot at and threatened with arrest again, he, the Family, and their friends, including Lisa and Gladys, are terrified that the Elkton Police Department and its police officers will finish Dennis off at the next chance they get.

***CAUSES OF ACTION***
***Federal Claims***

**COUNT ONE**
**Violations of 42 U.S.C. § 1983 – Municipal Liability**
*The Town of Elkton*

66. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

67. That at all times relevant to this Complaint, the Elkton Police Department and its personnel were acting under the direction and control of the Town of Elkton, which acted by and through its agents and employees who were responsible for making the policies for the Elkton Police Department, its officers, and operations. The Elkton Police Department personnel named in this Complaint were acting either pursuant to official policy or the practice, custom, or usage of the Town of Elkton and/or the Elkton Police Department, a final decision by a policy maker, or as a result of deliberate indifference toward training or supervision.

**I. *MONELL* CLAIM AGAINST THE TOWN OF ELKTON FOR UNCONSTITUTIONAL POLICIES, CUSTOMS, AND/OR PATTERNS AND PRACTICES**

68. At the time of the conduct complained of herein, the Town of Elkton, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring its police officers to confront companion animals with the use of excessive force where less lethal alternatives exist and to destroy them without legal cause or justification.

69. At the time of the conduct complained of herein, the Town of Elkton, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring its police officers to discharge their firearms without regard for the possibility that they could seriously injure or take a human life, where less lethal alternatives exist.

70. At the time of the conduct complained of herein, the Town of Elkton, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring its police officers to intimidate civilians with unlawful physical force and/or the unjustified threat of arrest.

71. The final policy makers of the Town of Elkton and the Elkton Police Department had actual or constructive knowledge of these unconstitutional policies, customs, and/or patterns, and practices, yet failed to take any reasonable or adequate steps to remedy them.

72. These policies, customs, and/or patterns and practices led the Elkton Police Department and its personnel to believe that this misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

73. These policies, customs, and/or patterns, and practices made it reasonably foreseeable that the Elkton Police Department and its personnel, including those named in this Complaint, would violate peoples' constitutional rights in precisely the manner that the Plaintiffs' rights were violated, and the Town of Elkton, through its respective final policy makers, was deliberately indifferent to this risk.

74. These policies, customs, and/or patterns, and practices of the Town of Elkton were the moving force behind the denials of the Plaintiffs' rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, and equal protection of the laws.

75. Additionally, these policies, customs, and/or patterns, and practices implicitly or explicitly encourage the Elkton Police Department and its personnel to be more aggressive and use unlawful and unjustifiable force with civilians' friendly pit bulls – *viz*., American Staffordshire terriers, American pit bull terriers, Staffordshire bull terriers, and bull terriers.

76. As a result of the unconstitutional policies, customs, and/or patterns, and practices, police officers with the Elkton Police Department executed Shiloh in cold blood with multiple gunshots fired from their .45 Sig Sauer handguns, some of which missed and were within countable inches of Gladys and Dennis, and some of which were fired when Shiloh was in Dennis' arms, causing all of the Plaintiffs to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

## II. *MONELL* CLAIM AGAINST THE TOWN OF ELKTON FOR UNCONSTITUTIONAL DISCIPLINE, TRAINING, AND SUPERVISION

77. At all times herein pertinent, the Town of Elkton had policies, customs, and/or patterns, and practices of failing to properly discipline, train, and supervise the Elkton Police Department and its personnel, including the members of the Elkton Police Department named in this Complaint, in the proper way to use non-lethal force when around companion animals and civilians, and when it is appropriate to use lethal force. To-wit, the Town of Elkton failed to ensure that the Elkton Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland laws when discharging their firearms.

78. At all times herein pertinent, the Town of Elkton had policies, customs, and/or patterns, and practices of failing to properly discipline, train, and supervise the Elkton Police Department and its personnel, including the members of the Elkton Police Department named in this Complaint, about unlawfully intimidation of civilians and failed to ensure that the Elkton Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland law when communicating with the public.

79. The final policymakers of the Town of Elkton had actual or constructive knowledge of these unconstitutional practices yet failed to take any reasonable or adequate steps to remedy them. In fact, the inappropriate use of lethal force and the use of force to intimidate civilians occur so frequently that they have become the accepted procedure by the Elkton Police Department and its personnel.

80. Acting under the color of law, by and through the policy makers of the Town of Elkton and pursuant to official policy, customs, and/or patterns, and practices, the Town of Elkton intentionally, knowingly, recklessly, or with deliberate indifference to the rights of its visitors and inhabitants failed to instruct, supervise, control, and/or discipline the members of the Elkton Police Department and its personnel in the performance of their duties.

81. These policies, customs, and/or patterns, and practices led the named members of the Elkton Police Department to believe that misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

82. This pattern made it foreseeable that the Elkton Police Department and its personnel, including those named to this Complaint, would violate peoples' constitutional rights, in precisely the manner the Plaintiffs' rights were violated, and the Town of Elkton, through its final policy makers, was deliberately indifferent to this risk. In fact, had the Town of Elkton diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis as heretofore alleged, it could have prevented or could have aided in preventing the commission of said wrongs and intentionally, knowingly, and with deliberate indifference to visitors and inhabitants of Elkton, Maryland, refused to do so.

83. These policies, customs, and/or patterns and practices of the Town of Elkton, as described more fully in the body of this Complaint, were the moving force behind the execution of Shiloh in cold blood, with multiple gunshots fired from the police officers' handguns, some of which missed and were within countable inches of Gladys and Dennis, and some of which were fired when Shiloh was in Dennis' arms.

84. As a result of the Town of Elkton's failure to supervise, discipline, and train the Elkton Police Department and its personnel, including those police officers named in this Complaint, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, the right to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

**COUNT TWO**
**Violation of Fourth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Supervisory Violations**
*(The Commissioners, the Mayor, the Chief of Police, and Richard and Jane Roes 1-20)*
***In their individual and official capacities***

85. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

86. The Count Two Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

87. That the Count Two Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

88. That at all times herein pertinent, the Count Two Defendants were acting in the capacity of supervisors to Elkton Police Department and its personnel. As supervisors, the Count Two Defendants were responsible for the training, instruction, supervision, discipline, and control of the police officers employed by the Elkton Police Department, including the police officers named in this Complaint.

89. Upon information and belief, the Count Two Defendants received complaints about the conduct of the police officers with the Elkton Police Department, including those police officers named in this Complaint, or in the exercise of due diligence would have perceived that the police officers, especially those named in this Complaint, had exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to civilians like the Plaintiffs.

90. The Count Two Defendants knew or in the exercise of due diligence would have known that the conduct displayed from the police officers with the Elkton Police Department that are named in this Complaint was likely to occur.

91. The Count Two Defendants failed to take any preventative or remedial measures to guard against the conduct of the police officers with the Elkton Police Department that are named in this Complaint. The failure of the Count Two Defendants amounted to gross negligence, deliberate indifference, or deliberate misconduct, which directly caused the deprivations of the constitutional rights suffered by the Plaintiffs. The Count Two Defendants failed to train, instruct, supervise, and discipline the police officers with the Elkton Police Department named in this Complaint, and the other police officers of the Elkton Police Department, and said failure caused the Plaintiffs' damages.

92. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Two Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force and the right to be free from unlawful seizures of personal property, the right to due process, equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of

Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

## COUNT THREE

**Violation of Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 – Failure to Intercede and Prevent the Violation of Constitutional Rights**
*Against all Defendants except the Town of Elkton*
***In their individual and official capacities***

93. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

94. The Count Three Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

95. That the Count Three Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this Complaint.

96. That the Count Three Defendants each had opportunities to intercede on behalf of the Plaintiffs to prevent their constitutional rights to be free from the exercise of unjustifiable and unlawful excessive force from being violated, as well as the unconstitutional seizure of the Family Plaintiffs' companion animal, the denial of due process, and equal protection of the laws. However, due to the Count Three Defendants' intentional conduct and/or deliberate indifference, they refused to do so.

97. That the Count Three Defendants had a realistic opportunity to intervene in a timely fashion and failed to do so.

98. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Three Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, and to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

## COUNT FOUR

**Violation of Fourth and Fourteenth Amendment Rights**
**and Conspiracy to Violate Fourth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Excessive Use of Force**
*Against all Defendants except the Town of Elkton*
***In their individual and official capacities***

99. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

100. The Count Four Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

101. That the Count Four Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

102. That the Count Four Defendants acted intentionally, in concert, and in confederation by agreement and understanding to violate the Plaintiffs' rights to be free from the use of excessive force.

103. That the Count Four Defendants engaged in actions that deprived the Plaintiffs of their constitutional rights not to be subjected to the use of unreasonable and excessive force.

104. That the amount of force used by John Doe 1 and John Doe 2 was excessive and would be considered unreasonable by competent police officers presented with the exact same circumstances at the time that the extreme force was used.

105. That there was no crime at issue, no immediate threat to the safety of John Doe 1 and John Doe 2, or others, and none of the Plaintiffs were resisting arrest or attempting to evade arrest by flight. In fact, none of the Plaintiffs were under arrest nor were any of the onlookers – no one at all.

106. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Four Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, and to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

**COUNT FIVE**
**Violation of Fourth and Fourteenth Amendment Rights**
**and Conspiracy to Violate Fourth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Seizure and Forfeiture of Property**
*All Defendants except the Town of Elkton*
***In their individual and official capacities***

107. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

108. The Count Five Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

109. That the Count Five Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

110. That the Count Five Defendants acted intentionally, in concert, and in confederation by agreement and understanding to violate the Family Plaintiffs' rights to be free from unlawful seizure and forfeiture of property.

111. That the Family Plaintiffs' companion animal was on the Family Plaintiffs' property at the time he was barbarically shot by John Doe 1 and John Doe 2 and, at all times relevant hereto, the Family Plaintiffs had actual possession of Shiloh and/or were entitled to possess him.

112. That by intentionally shooting Shiloh, the Count Five Defendants exerted control over him and willfully interfered with the Family Plaintiffs' possessory interests in their personal property.

113. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Five Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, and to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

## <u>COUNT SIX</u>

**Violation of Fifth and Fourteenth Amendment Rights**
**and Conspiracy to Violate Fifth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Violation of Plaintiffs' Substantive Due Process Rights**
*Against all Defendants except the Town of Elkton*
***In their individual and official capacities***

114. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

115. The Count Six Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

116. That the Count Six Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

117. That the Count Six Defendants acted intentionally, in concert, and in confederation by agreement and understanding to violate the Family Plaintiffs' rights to substantive due process.

118. That the Count Six Defendants deprived the Family Plaintiffs of their property without due process of law, thereby depriving them of their rights, privileges, and immunities as guaranteed by the Fifth and Fourteenth Amendments to the Constitution to the United States and the Maryland Declaration of Rights.

119. That the Count Six Defendants committed their actions with a callous and deliberate indifference and in a reckless manner which shocks the conscience of a civilized society. Despite the fact that there was no danger and, after the first round of shots were fired, the Plaintiffs and onlookers were pleading with John Doe 1 and John Doe 2 not to shoot more shots, John Doe 1 and John Doe 2 ignored them and continued firing when Shiloh in Dennis' arms from a distance of approximately twenty feet.

120. The Count Six Defendants' physical actions made it clear that they believed that they can just arbitrarily shoot and kill a family pet that was neither in harms' way nor posing any danger to John Doe 1, John Doe 2, or anyone else.

121. The Count Six Defendants actions were willful, wanton, and in reckless disregard of and indifference to the Family Plaintiffs' constitutional right to be free from the arbitrary exercise of the powers of government. The acts of the Count Six Defendants were

committed unlawfully, intentionally, maliciously, and arbitrarily, thereby violating the due process protection of life, liberty, and property.

122. There was no need for the application of force because John Doe 1 and John Doe 2 were not in any danger of injury nor was anyone else. Moreover, the Count Six Defendants had less lethal tools they could have utilized had they genuinely believed that there was any danger. Even if some restraint were needed for Shiloh, which it was not, those less lethal tools would have more than sufficed. Instead, the Count Six Defendants assassinated Shiloh and almost killed Dennis and Gladys in the process.

123. The Plaintiffs and Shiloh had done nothing wrong and there was no reason for the Count Six Defendants to use deadly force. Their actions were a raw abuse of governmental power and were done maliciously and sadistically for the very purpose of causing harm.

124. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Six Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

## COUNT SEVEN

**Violation of Fifth and Fourteenth Amendment Rights**
**and Conspiracy to Violate Fifth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Violation of Plaintiff's Procedural Due Process Rights**
*Against all Defendants except the Town of Elkton*
***In their individual and official capacities***

125. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

126. The Count Seven Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

127. That the Count Seven Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

128. That the Count Seven Defendants acted intentionally, in concert, and in confederation by agreement and understanding to violate the Plaintiffs' rights to procedural due process.

129. That the Count Seven Defendants deprived the Family Plaintiffs of their property without due process of law, thereby depriving the Family Plaintiffs of their rights, privileges, and immunities as guaranteed by the Fifth and Fourteenth Amendments to the Constitution to the United States and the Maryland Declaration of Rights.

130. The Family Plaintiffs had a strong private interest in their pet dog, Shiloh. And he had been a member of the Family for three years.

131. The Count Seven Defendants killed the Family Plaintiffs' dog, Shiloh, despite the fact that he was not a threat to them or anyone else. The procedures used whereby the Count Seven Defendants were free to act in a high-handed arbitrary manner when using their discretion to kill Shiloh, created a situation where improper destruction of the Family Plaintiffs' property in the form of their companion animal was possible and did occur.

132. Pre-deprivation remedies were available to the Count Seven Defendants and should have been used if necessary. There was no need for the application of force because the Count Seven Defendants were not under attack nor was anyone else. If Shiloh was dangerous, which he wasn't, then animal control could have been called and a hearing could have been held to determine whether to destroy Shiloh. This simple procedure would have prevented the constitutional violations that occurred, assuming *arguendo* that Shiloh had posed a danger.

133. Moreover, the Count Seven Defendants had tools that would have restrained Shiloh with them in a less lethal manner. Thus, even if some restraint for Shiloh was needed, which it was not, those tools would have sufficed. Instead, the Count Seven Defendants decided to shoot and kill Shiloh.

134. There were no exigent circumstances that vitiated the need for proper procedures, such as detaining Shiloh or calling an animal control specialist to handle the situation. Pre-deprivation procedures were available, which due process required to be utilized if some measure of control were actually needed.

135. The Count Seven Defendants acted with reckless and deliberate indifference when they refused to apply appropriate procedural safeguards.

136. The conduct of the Count Seven Defendants was egregious, oppressive, and constituted excessive and brutal use of physical force when a non-violent resolution of the situation was available through the use of proper procedures. The Count Seven Defendants acted with willful, wanton, and reckless disregard of, and deliberate indifference to, the Plaintiffs' constitutional rights to due process.

137. As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Seven Defendants, the Plaintiffs were denied their constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, the right to be free from unlawful seizures of personal property, the right to due process, and to equal protection of the laws, and were caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of State of Maryland statutory and common law, the Maryland Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983.

***State Claims***

**COUNT EIGHT**

**Violation and Conspiracy to Violate Rights Secured under Articles Twenty-Four and Twenty-Six of the Maryland Declaration of Rights**

*(Against all Defendants except the Town of Elkton)*

***In their individual and official capacities***

138. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

139. That the Count Eight Defendants, within the scope of their employment, acted intentionally, in concert, and in confederation by agreement and understanding to violate the Plaintiffs' rights secured under the State of Maryland's Declaration of Rights, Article 24 and Article 26.

140. That the Count Eight Defendants, in the scope of their employment, did engage in activity that violated the Plaintiffs' rights as protected under the Maryland Constitution.

141. That the Count Eight Defendants' acts and omissions including, but not limited to, the use of excessive force against the Plaintiffs and the depravation and destruction of their personal property, deprived them of their rights secured under the Maryland Declaration of Rights including, but not limited to:

(a) freedom from depravation of private property without due process, including notice and an opportunity to be heard;

(b) freedom from seizure of private property for nonpublic use;

(c) freedom from the abuse of police power;

(d) freedom from the unreasonable exercise of police power;

(e) freedom from police use of excessive force; and

(f) freedom from deliberate indifference by police that knew of and disregarded the substantial risk of injury.

142. The Plaintiffs have the right to be free from the unlawful seizure of their personal property and from the use of excessive and unnecessary physical force. These rights were denied when the Count Eight Defendants used excessive and unnecessary physical force on the Plaintiffs and the Family Plaintiffs' companion animal without legal cause, excuse, or justification.

143. The Family Plaintiffs had a protected property interest in Shiloh and were afforded less process than was due under the law by the Count Eight Defendants in depriving them of the rights in question.

144. By the actions detailed above including, but not limited to, the excessive use of force against the Plaintiffs and the excessive use of force to seize the Family Plaintiffs' property, and the seizure of the Family Plaintiffs' property, the Count Eight Defendants deprived the Plaintiffs of their constitutional rights under Article 24 and Article 26 of the Maryland Declaration of Rights.

145. Because of the depravation of their rights, the Plaintiffs were subjected to unnecessary and unlawful gun fire at them and/or their personal property, which barbarically took Shiloh's life.

146. The Count Eight Defendants, at all times relevant hereto, acted under the color of law and in a manner that was not objectively reasonable.

147. The Plaintiffs further allege that all of their injuries, losses, and damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Eight Defendants, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

148. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT NINE
**State of Maryland Claim of Assault and Battery**
**and Conspiracy to Commit Assault and Battery**
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

149. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

150. That the Count Nine Defendants, within the scope of their employment, acted intentionally, in concert, and in confederation by agreement and understanding to assault and commit batteries on the Plaintiffs.

151. That the Count Nine Defendants intentionally threatened to do bodily harm to the Plaintiffs and possessed the apparent present ability to carry out their threats.

152. That the Plaintiffs were put in fear of actual bodily harm. This was the case where the Plaintiffs suffered direct assaults and batteries and where the Defendants' actions were directed toward a different Plaintiff, as all the Plaintiffs were nonetheless put in fear of imminent actual bodily harm to themselves.

153. During the reckless and unlawful execution of the Family Plaintiffs' companion animal, Shiloh, the Count Nine Defendants committed intentional and unpermitted touchings of the Plaintiffs with actual malice that were harmful and offensive to them, offending their reasonable sense of dignity. And as set forth above, it is likely that some of the bullets were intended for Dennis and/or fired to further intimidate him and the other Plaintiffs.

154. The Count Nine Defendants acted maliciously, and with such recklessness as to demonstrate a conscious disregard for the Plaintiffs' rights.

155. The Plaintiffs further allege that all of their injuries, losses, and damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Nine Defendants, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

156. As a direct and proximate cause of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; shock to their person, pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; injury to reputation; and permanent loss of natural psychological development.

## COUNT TEN
### State of Maryland Claim of Trespass of Chattel and Conspiracy to Commit a Trespass of the Plaintiffs' Chattel
*(Against all Defendants except the Town of Elkton)*

***In their individual and official capacities***

157. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

158. The Count Ten Defendants acted individually, in concert, and in confederation by agreement and understanding to intentionally commit a trespass upon the Family Plaintiffs' property as alleged more specifically in the body of this Complaint.

159. That the Count Ten Defendants acts were in the scope of their employment and intentional or in reckless disregard of the probable consequences in the exercise of dominion or control over the Family Plaintiffs' personal property, to wit, Shiloh as described.

160. The Count Ten Defendants acted without authority or justification in their intentional interference and disposal of the Family Plaintiffs' chattel that was in the Plaintiffs' possession at the time of the acts described herein, and which the Plaintiffs had a right to possess.

161. The proximate cause of the Plaintiffs' injuries was the physical harm the Count Ten Defendants caused to the Family Plaintiffs' personal property as described above.

162. The Plaintiffs further allege that all of their injuries, losses, and damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Ten Defendants, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

163. As a direct result of the Count Ten Defendants' acts of trespass of the Family Plaintiffs' chattel and the injuries resulting from those acts, the Plaintiffs lost the intrinsic value of their property and suffered economic and noneconomic damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT ELEVEN
**State of Maryland Claim of Conversion**
**and Conspiracy to Convert the Plaintiffs' Property**
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

164. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

165. The Count Eleven Defendants acted individually, in concert, and in confederation by agreement and understanding to intentionally convert the Family Plaintiffs' property. And their conduct was in the scope of their employment.

166. That the Family Plaintiffs' dog was on the Family Plaintiffs' property at the time he was barbarically executed by the named members of the Elkton Police Department, and at all times relevant hereto, the Plaintiffs had actual possession of Shiloh and/or were entitled to possess him.

167. That the Count Eleven Defendants acted intentionally and/or in reckless disregard of the probable consequences in the exercise of dominion or control over the Plaintiffs' personal property, to wit, Shiloh as described. And, by killing Shiloh, the Count Eleven Defendants exercised dominion and control over him, amounting to the taking of the Family Plaintiffs' personal property.

168. The manner in which the Count Eleven Defendants exercised such dominion or control was both inconsistent with, and seriously interfered with, the Family Plaintiffs' rights as property owners to enjoy and/or control their personality. And, further, it was done with the intention of depriving the Family Plaintiffs of their personal property without permission or justification.

169. The Plaintiffs further allege that all of their injuries, losses, damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Eleven Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs directly or indirectly.

170. The proximate cause of the Plaintiffs' injuries was the physical harm the Count Eleven Defendants caused to the Plaintiffs' personal property as described above.

171. As a direct result of the Count Eleven Defendants' acts of conversion and the injuries resulting from those acts, the Plaintiffs lost the intrinsic value of their property and suffered economic and noneconomic damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT TWELVE

**State of Maryland Claim of Intentional Infliction of Emotional Distress and Conspiracy to Intentionally Inflict Emotional Distress**
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

172. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

173. The Count Twelve Defendants acted individually, in concert, and in confederation by agreement and understanding to intentionally inflict emotional distress upon the Plaintiffs.

174. That the Count Twelve Defendants' conduct was in the scope of their employment and intentional, reckless, extreme, outrageous, and caused severe emotional distress to the Plaintiffs. By way of example and without limitation, the Plaintiffs submit that the reckless and unlawful gun shots fired at Shiloh when he was walking to Dennis and, thereafter, in Dennis' arms, were calculated to execute Shiloh and possibly Dennis, instill fear in the Plaintiffs for their lives and each others, and to shame, humiliate, and produce fear of the Plaintiffs in the community.

175. That the Count Twelve Defendants' conduct had the evident and foreseeable consequence of executing Shiloh, terrifying the Plaintiffs, and producing public fear.

176. Despite Dennis and Gladys' survival of the shots fired countable inches from them when Shiloh was walking toward Dennis and fired directly at Dennis when Shiloh was in his arms, the Plaintiffs will forever be haunted by the Count Twelve Defendants' conduct, which will continue to have a detrimental effect on them as they will forever be reminded and remember the reckless and unlawful conduct of the Count Twelve Defendants, how the Count Twelve Defendants almost took their lives, and how the Count Twelve Defendants took Shiloh's life.

177. As a result of the Count Twelve Defendants' intentional and outrageous conduct that was undertaken with willfulness and actual malice, and with the intent to inflict injury upon the Plaintiffs with reckless indifference to their rights and the rights of others, the Plaintiffs have suffered and continue to suffer from severe emotional and mental conditions generally recognized and diagnosed by traditional professionals.

178. That as a direct and foreseeable consequence of the Count Twelve Defendants' acts and omissions, which were the proximate cause of the Plaintiffs' severe emotional distress, the Plaintiffs have suffered and continue to suffer disabling emotional, mental, and physical harm.

179. That the Count Twelve Defendants' actions and conduct as set forth more fully in the body of this Complaint, was extreme and outrageous and directly and proximately caused severe emotional distress to the Plaintiffs, and thereby constituted intentional infliction of emotional distress.

180. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental

anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

**COUNT THIRTEEN**
**State of Maryland Claim of Negligence**
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

181. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

182. That the Count Thirteen Defendants, each of them, owed the Plaintiffs a legal duty of care as members of the public residing in Elkton, Maryland, including a duty to protect them from injury and harm, to refrain from subjecting them to unnecessary harm, to monitor one another, and to report suspected misconduct.

183. The Count Thirteen Defendants, acting within the scope of their employment, breached their duties and were negligent in their conduct both before and during the course of their treatment of the Plaintiffs and their personal property. To wit, their conduct fell below the acceptable standard of care and treatment rendered by reasonable police and animal control officers operating under the same or similar circumstances, and their treatment of the Plaintiffs and their personal property caused their severe and permanent injuries. Additionally, the Count Thirteen Defendants breached their duties when they:

(a) discharged their firearms in a residential neighborhood without due cause, provocation, or justification;

(b) shot, injured, and killed the Plaintiffs' dog without due cause, provocation, or justification;

(c) failed to use due care under the circumstances;

(d) fired multiple gun shots at the Plaintiffs' dog when the Plaintiffs were in the line of fire;

(e) fired multiple gun shots at the Plaintiffs' dog when he was in Dennis' arms;

(f) promoted the unnecessary and unlawful shooting of friendly companion animals; and

(g) any and all other acts or omissions constituting negligence as may appear during the course of discovery procedures as provided in the Federal Rules and/or the trial of this matter.

184. The Plaintiffs further allege that all of their injuries, losses, damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs directly or indirectly.

185. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT FOURTEEN

**State Claim of Negligent Hiring, Training, Supervision, Discipline, and Retention**

*(The Commissioners, the Mayor, the Chief of Police, and Richard and Jane Roes 1-20, the Cecil County SPCA, and the Director of the Cecil County SPCA)*

***In their individual and official capacities***

186. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

187. That at all times relevant to this Complaint, there was an employment relationship between the individually named Defendants and the Town of Elkton, the Elkton Police Department, or the Cecil County SPCA. And the breaches of duty alleged herein were in the scope of the Count Fourteen Defendants' employment and the employment of their subordinates.

188. The Count Fourteen Defendants had a duty to the public to use due and reasonable care in selecting and retaining only fit, competent, and careful employees and to refrain from retaining the services of unfit employees. The Count Fourteen Defendants knew or should have known by the exercise of diligence and reasonable care that the employees at issue were incompetent and capable of inflicting harm of some type. The employees at issue were potentially dangerous and posed an unreasonable threat to the members of the public as would foreseeably come in contact with them.

189. At the time of the events alleged in the body of this Complaint, each of the Count Fourteen Defendants had a duty to the public, including the Plaintiffs, to exercise due care in the hiring, training, supervision, discipline, and retention of the employees at issue, including the employees named in this Complaint.

190. That the Count Fourteen Defendants had actual and/or constructive knowledge of the incompetence of the employees at issue and they were unfit for the jobs for which they were hired and posed an unreasonable risk to members of the public who would foreseeably come in contact with them. Further, those employees at issue with supervisory positions were additionally unfit for any supervisory position.

200. The Count Fourteen Defendants breached their duty of care owed by, including, but not limited to, willfully, wantonly, and recklessly failing to exercise their duties responsibility, failing to exercise proper care and diligence in hiring, retaining, supervising, disciplining, and training, and, as stated above, they also knew or should have known in the absence of neglect that the employees at issue posed a probable and/or foreseeable and unreasonable risk of harm and injury to the public and the Plaintiffs.

201. The Plaintiffs further allege that all of their injuries, losses, damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Fourteen Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs directly or indirectly.

202. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT FIFTEEN
### Gross Negligence
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

203. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

204. That the Count Fifteen Defendants had a duty to employ reasonable measures in the treatment of the Plaintiffs and their personal property.

205. That the Count Fifteen Defendants' actions toward the Plaintiffs and their personal property were undertaken in the scope of their employment, under the color and pretense of law, and under the color of statutes, customs, and usages of their employer, and with malice and/or gross negligence, deliberate indifference, and an utter disregard for the Plaintiffs' rights arising under federal and State of Maryland law.

206. That the Count Fifteen Defendants superior to those police officers that recklessly discharged their firearms failed to properly supervise the aforementioned police officers, and their actions were undertaken within the scope of their employment, under the color and pretense of law, and under the color of statutes, customs, and usages of their employer, and with malice and/or gross negligence, deliberate indifference, and an utter disregard for the Plaintiffs' rights arising under federal and State of Maryland law.

207. The Plaintiffs further allege that all of their injuries, losses, damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Fifteen Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs directly or indirectly.

208. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

## COUNT SIXTEEN

**State Claim of Negligent Failure to Warn and Protect**
**Against Hazard Created by Co-Defendants**
*(Against all Defendants except the Town of Elkton)*
***In their individual and official capacities***

209. Each of the paragraphs of this Complaint is incorporated by the Plaintiffs as if restated fully herein.

210. The Count Sixteen Defendants, in the scope of their employment, by and through their fellow officers and employees, including the named Defendants in this Complaint, intentionally and/or recklessly created a hazardous condition that foreseeably threatened and injured the liberty, physical safety, reputations, and emotional state of the Plaintiffs. They created this hazardous condition by intentionally and/or recklessly providing no information or false and misleading information to the other named Defendants, their superiors, and the Plaintiffs, thereby instigating, encouraging, and/or prolonging the police officers' unlawful shooting when Shiloh walked in Dennis and Gladys' direction and, subsequently, when he was in Dennis' arms.

211. The Count Sixteen Defendants, based on information in their exclusive possession, knew or should have known that this hazardous condition unjustly and

unjustifiably threatened the Plaintiffs. The Plaintiffs were thereby subject to an unreasonable risk of grievous injury.

212. The Count Sixteen Defendants had a duty to warn the Plaintiffs and protect them from the hazardous conditions that they and their fellow officers had created.

213. The Count Sixteen Defendants knew of the hazard and failed to exercise due care to warn the Plaintiffs about and to protect them. They took no reasonable steps to disclose the hazard to the Plaintiffs or to otherwise protect the Plaintiffs from the dangerous situation that they had created. Rather, they took affirmative steps to maximize the Plaintiffs' exposure to the danger by failing to warn the them and/or otherwise intervene.

214. The Plaintiffs further allege that all of their injuries, losses, and damages – past, present, and prospective – were caused solely by the conduct, actions, and inactions of the Count Sixteen Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

215. The Count Sixteen Defendants breached their duty to warn and protect the Plaintiffs from the injuries alleged herein and more fully in the body of this Complaint, directly, proximately, and caused the direct and foreseeable injuries, including irreparable reputational harm, mental anguish, severe emotional distress, economic injuries, and loss of educational and athletic opportunities, as well as enhancing injuries causes by other actors.

216. As a direct and proximate cause of these acts, the Plaintiffs additionally suffered damages including, among others, the following: personal injuries; shock to their person, pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; injury to reputation; and permanent loss of natural psychological development.

## COUNT SEVENTEEN
**Respondent Superior**
*(Cecil County SPCA)*

217. Each of the paragraphs of this Complaint are incorporated by the Plaintiffs as if restated fully herein.

218. At the time of the occurrences that are the subject of this Complaint, Jean Deeming and Jerry Watkins were agents, servants, and/or employees of the Cecil County SPCA.

219. That at the time of the occurrences, Jean Deeming and Jerry Watkins were acting in concert with, for the benefit of, at the insistence, request, and instruction of the Cecil County SPCA, and were otherwise acting within the scope of their responsibility, authority, and employment as agents, servants, and/or employees of the Cecil County SPCA.

220. The Cecil County SPCA is vicariously liable under the doctrine of respondeat superior for the acts of Jean Deeming and Jerry Watkins, who were acting in the cause of and within the scope of their responsibility, authority, and employment as agents, servants, and/or employees of the Cecil County SPCA, and the time of the occurrences and pursuant to the facts stated herein.

221. As a direct and proximate result of the conduct of the Cecil County SPCA and its agents, servants, and employees, the Plaintiffs have suffered and will continue to suffer damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; injury to reputation; vocational opportunity; athletic opportunity; personal fulfillment; sexual activity; family relations; enjoyment, and expression.

## *CLAIMS, DAMAGES, AND JURY DAMAGES*

222. The actions of the Defendants have deprived the Plaintiffs of their civil rights under Maryland and federal law, including Article 24 and Article 26 of the Maryland Declaration of Rights and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, respectively.

223. The unlawful and reckless acts of the Defendants constituted violations of the Plaintiffs' rights under the Maryland Declaration of Rights and under Maryland statutory and common law, including any innominate tort theory encompassed by the facts pleaded herein.

224. The unlawful and reckless actions of the Defendants caused the Plaintiffs severe emotional distress, humiliation, and embarrassment, pain and suffering, and other damages including, without limitation, damages for lost wages, for which the Plaintiffs are entitled to monetary relief.

225. All acts committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, with actual malice, wantonly, and/or recklessly and said acts meet all of the standards for the imposition of punitive damages.

226. As a direct and proximate result of these acts, the Plaintiffs suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to their reputations.

**WHEREFORE**, the Plaintiffs pray as follows:

A. That the Court will award compensatory damages to the Plaintiffs and against the Defendants, jointly and/or severally, in the amount of five million dollars (5,000,000.00), which exceeds any and all jurisdictional requirements of this Court that may exist, and that the Town of Elkton and the Cecil County SPCA be held liable for the wrongful acts of their employees wherein appropriate;

B. That the Court award punitive damages to the Plaintiffs, and against the Defendants, jointly and/or severally, that will deter such conduct by the Defendants in the future;

C. For a trial by jury;

D. For interest on said judgment, recovery of the Plaintiffs' costs, including any and all allowable attorney's fees; and

E. For any and all other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

Date: June 21, 2012

/s/

Barry R. Glazer, Esquire
The Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
Phone: (410) 547-8568
Fax: (410) 547-0036
Bar Roll No.: 08371

**DEMAND FOR JURY TRIAL**

The Plaintiffs demand a jury trial on all issues and causes of action asserted in the foregoing Complaint.

/s/

Barry R. Glazer, Esquire