IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAKIA McCOURRY et al.　　　　*
　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　*　　Civil Action No. WMN-12-1839
　　　　　　　　　　　　　　　*
TOWN OF ELKTON et al.　　　　 *
　　　　　　　　　　　　　　　*
*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*

**MEMORANDUM**

Before the Court are two motions to dismiss: one filed by Defendants Town of Elkton, Joseph Fisona, William Ryan, and the Commissioners of the Town of Elkton (collectively, the Town Defendants), ECF No. 17, and one filed by Defendants Cecil County SPCA, Inc. (SPCA), Jean Deeming, and Jerry Hawkins (collectively, the SPCA Defendants), ECF No. 18. Both motions are fully briefed. Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that both motions will be granted.

**I. FACTUAL BACKGROUND**

This action arises out of an October 15, 2011, incident in which two police officers of the Elkton Police Department shot and killed "Shiloh," a pet pit bull belonging to Plaintiffs Nakia McCourry and Kenny Bedwell. The forty-plus page, 226 paragraph Complaint relates a disquieting account of the shooting which, if the allegations are true, reflects a high

degree of callousness on the part of these two police officers toward this family pet, as well as an apparent disregard for the safety and lives of those at the scene.  The allegations in the Complaint, which the Court must accept as true for purposes of this motion, are as follows.

Plaintiffs Nakia McCourry and Kenny Bedwell live with their four young children in Elkton, Maryland, which is located in Cecil County.  Plaintiff Dennis Bedwell, Kenny Bedwell's brother, lives on an adjacent street.  Plaintiffs Lisa Lucas and Gladys Medina are sisters and are neighbors of McCourry and Kenny Bedwell.  On the afternoon of October 15, 2011, Shiloh was in the fenced-in backyard of the McCourry/Bedwell Residence (the Residence) when a neighbor's dog broke through the fence.  There was a brief scuffle between the two dogs but neither dog was injured and the neighbor's dog left the yard.  Lisa Lucas then attempted to patch the hole in the fence through which the neighbor dog entered.  At some point during the scuffle, however, someone called the Elkton Police Department.

A considerable time later, two police officers from the Elkton Police Department, Defendants John Doe 1 and John Doe 2, responded to the call and Lisa Lucas began talking with them on the street.  Dennis Bedwell and Gladys Medina were in the front yard of the Residence.  While Lucas was talking to the officer, Shiloh came through the hole in the fence that Lucas had

attempted to repair and headed toward Dennis, tail wagging.  One of the officers called out to Shiloh and Shiloh went to the officer and sniffed his pants-leg, without making contact.  Dennis called Shiloh and Shiloh began walking away from the officer, toward Dennis.

As Shiloh was walking toward Dennis, still wagging his tail, the second police officer on the scene took out his service weapon and said, "you better get your dog."  At a point when Shiloh was in the front yard of the Residence, still walking toward Dennis, the second officer started shooting at Shiloh and the first officer did likewise.  Shiloh was hit multiple times and collapsed in front of Dennis.  Dennis picked up the bleeding dog and, while Dennis was holding the dog in his arms, the officers continued to shoot at Shiloh.  Dennis states that he felt every bullet that was fired.  Plaintiffs also state that Gladys Medina was in the line of fire while the officers were shooting at the dog in Dennis's arms.

In addition to the details related to the shooting of Shiloh, the Complaint contains general allegations of a widespread practice on the part of the SPCA and the Elkton police of shooting domestic pets, particularly pit bulls.  In addition to these generalized allegations, Plaintiffs relate several specific accounts of the unprovoked, sadistic shooting of domestic pets, but these were all committed by a particular

3

SPCA employee, Defendant Jerry Hawkins. Compl. ¶¶ 6-8. Plaintiffs also assert that Defendant Jean Deeming, the Director of the SPCA, has instructed the SPCA's animal control officers, as well as the officers of the Elkton Police Department, "to pay special attention to the opportunity to kill a pit bull," and has condoned "the reckless shooting of friendly dogs in residential areas without legal cause or justification." Id. ¶ 10. They further aver that the Town of Elkton and the Elkton Police Department "both implicitly and explicitly support their officers that follow [Deeming's] lead, even if it means shooting at civilians that are in the line of fire." Id.

In addition to the two police officers that shot Shiloh,[1] Plaintiffs have named as Defendants: the SPCA; Jean Deeming; Jerry Hawkins; the Town of Elkton; the Commissioners of the Town of Elkton, identified as Charles Givens, Mary Jablonski, Earl Piner, and Charles Hicks (the Commissioners); the Mayor of the Town of Elkton, Joseph Fisona; the Chief of the Elkton Police Department, William Ryan; and "Richard and Jane Roes 1-20" (the Roe Defendants), who are identified as supervisors of John and Jane Does 1-20 (the Doe Defendants). The Complaint contains seventeen counts, including several claims under 42 U.S.C. § 1983, as well as various state law claims. The Town Defendants

---

[1] Plaintiffs also name John and Jane Does 3-20, other officers of Elkton Police Department, as Defendants.

4

and SPCA Defendants have moved to dismiss all claims asserted against them.[2] In responding to the motions to dismiss, Plaintiffs concede that there is insufficient evidence at the present time to support many of the claims asserted against the moving Defendants. Specifically, they concede that Counts 3-7, 9-13, and 15-16 should be dismissed against the Town Defendants and Counts 4-12, and 16 should be dismissed against the SPCA Defendants.

With Plaintiffs' concessions, the following claims remain at issue in the pending motions:

Count 1 – Municipal Liability under § 1983 against the Town of Elkton only (the Monell[3] Claim);

Count 2 – Violation of Fourth and Fourteenth Amendments under § 1983, Supervisory Violations against the Commissioners, Mayor Fisona, and Chief Ryan, in their individual and official capacities;

Count 3 - Violation of Fourth and Fourteenth Amendments under § 1983, "Failure to Intercede and Prevent the Violation of Constitutional Rights" against the SPCA Defendants;

---

[2] The pending motions do not relate to the claims against John Doe 1 or John Doe 2. They have yet to be identified and thus no answer or other response has been filed on their behalf.

[3] Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978).

5

Count 8 – Violation and Conspiracy to Violate Rights under Articles 24 and 26 of the Maryland Declaration of Rights against all Defendants, in their individual and official capacities, except the Town of Elkton;

Count 13 – Negligence against the SPCA Defendants;

Count 14 – Negligent Hiring, Training, Supervision, Discipline and Retention against all Defendants, in their individual and official capacities, except the Town of Elkton;

Count 15 – Gross Negligence against the SPCA Defendants in their individual and official capacities;

Count 17 – Respondeat Superior against the SPCA.

In addition to issues related to these particular claims, Defendants argue that Lisa Lucas is not a proper Plaintiff and that punitive damages cannot be imposed against the Town of Elkton.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Such determination is a "context-specific task," Iqbal, 556 U.S. at 679, in which the factual allegations of the complaint must be examined to assess

whether they are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating a motion to dismiss, the "Court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Such deference, however, is not accorded to labels and legal conclusions, formulaic recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement. Iqbal, 556 U.S. at 678.

## III. DISCUSSION

### A. Lucas as a Proper Plaintiff

The only allegations in the Complaint related to Lisa Lucas are that she is a neighbor of Nakia McCourry and Kenny Bedwell; earlier on the day of the incident, she had attempted to repair the fence in the backyard of the Residence; she was present when the police officers shot Shiloh; she is a friend of Dennis; and, having witnessed the incident, she is "terrified that the Elkton Police Department and its police officers will finish Dennis off at the next chance they get." Compl. ¶ 65. Lucas's status as a concerned friend or a bystander of an incident harming another, however, does not give her a cause of action.

7

In implicit recognition that the allegations concerning Lucas fail to support any claim brought on her behalf, Plaintiffs inject in their opposition to Defendants' motions additional allegations. Plaintiffs allege that Lucas "did not immediately know if the bullets were directed at her or at Shiloh, Dennis, and Gladys, and she did not know if the bullets would subsequently be directed at her." Opp'n at 9. This new allegation, however, was not in the Complaint. Thus, it cannot be used to bolster her claims.

Plaintiffs then ask, should the Court find the allegations in the Complaint related to Lucas insufficient, that her dismissal be without prejudice and they be permitted to amend the Complaint. The Court notes that, with this new allegation, Plaintiffs essentially concede that Lucas, unlike her sister Gladys, was not in the line of fire. To suggest that Lucas would fear that the officers would somehow turn and start firing in her direction is generally inconsistent with the rest of their version of events, i.e., that the officers were intent on shooting the dog and only carelessly placed Dennis and Gladys in harm's way. While the Court will dismiss Lucas' claims without prejudice, the inclusion of the allegations from the opposition, without more, would not render her claims plausible.

### B. Claims Against the SPCA Defendants

The obvious deficiency in each of Plaintiffs' claims against the SPCA Defendants, as set out in the Complaint, is that no one from the SPCA was present or had any direct involvement with the events of October 15, 2011. Plaintiffs do describe in their Complaint other instances where Defendant Jerry Hawkins and perhaps other SPCA animal control officers callously or even sadistically shot domestic animals without legal cause or justification. Compl. ¶¶ 6-8. Plaintiffs also quote Defendant Jean Deeming as frequently expressing the sentiment that "[t]he only good pit bull is a dead pit bull." Id. ¶ 9. These allegations, while perhaps relevant to claims brought by other individuals for the death of a pet at the hands of an SPCA employee, establish no direct connection with the death of Shiloh.

In their opposition, Plaintiffs confirm that their claims against the SPCA Defendants "do not necessarily hinge on whether the SPCA Defendants were present at the time of the incident, nor on whether they were directly involved." Opp'n at 10. They posit, instead, that their claims against the SPCA Defendants are "based on the SPCA Defendants' failure to live up to the duty and responsibility they owed the Plaintiffs as the handlers of animal control services in Cecil County, Maryland." Id. This duty, according to Plaintiffs, arises out of a contract the SPCA Defendants maintained with Cecil County, Maryland requiring

9

the SPCA to handle any and all reported animal emergencies.  Id.
In Plaintiffs' view, "it is clear that the SPCA Defendants' lack
of presence at the [] Residence at the time of the Incident is,
in fact, the very thing that makes them liable."  Id. at 11.

One problem with this theory of liability based on omission
is that the alleged duty arises solely from a contract to which
Plaintiffs are not parties.  The contract is, according to
Plaintiffs, one between the SPCA and Cecil County.  Another
problem is that there is no indication from the Complaint that
the incident between Shiloh and the neighbor's dog to which the
Elkton Police responded was ever reported to the SPCA.  The
Complaint states that "one of the neighbors called the Elkton
Police Department to report the incident."  Compl. ¶ 51.  The
Complaint also states that "the Elkton Police Department may
notify the Cecil County SPCA if there is an emergency, which
triggers the Cecil County SPCA to promptly dispatch an animal
control officer to the scene,"  Compl. ¶ 5 (emphasis in
original), but there is no allegation that the Elkton Police
actually ever made a call to the SPCA related to this incident.
See also, id. ¶ 25 (alleging that "if a call or complaint is
received reporting an emergency, an animal control officer is to
respond promptly") (emphasis added).

The third and perhaps most significant problem with
Plaintiffs' attempt to impose liability on the SPCA Defendants

10

is that there is no legal basis on which to conclude that these SPCA Defendants could have exercised any authority over the officers of the Elkton Police Department. The Complaint is replete with conclusory statements regarding the adoption by officers of the Elkton Police Department of the SPCA Defendants' motives and methods. They allege that "many of the police officers seem to have joined the Cecil County SPCA and its animal control officers in what appears to be a sadistic enjoyment of the brutal spectacle of shooting domestic animals," Compl. ¶ 5, and that "the Elkton Police Department and its police officers have been conditioned by the Cecil County SPCA to believe that the way to address any concerns about friendly domesticated animals is to shoot them." Id. ¶ 42. Plaintiffs further allege that Defendant Deeming communicated to the Elkton police officers her wishes concerning pit bulls: "[Deeming] has made her desire to eradicate Cecil County of all pit bulls unmistakably clear to her animal control officers and the police officers with the Elkton Police Department," id. ¶ 9; and "[Deeming] instructed . . . the police officers with the Elkton Police Department to pay special attention to the opportunity to kill a pit bull." Id. ¶ 10. What is missing from the Complaint, however, is any allegation that would support the legal conclusion that Deeming had any authority to either order

police officers to take specific actions or to prevent police officers from taking specific actions.

For these reasons, the claims against the SPCA Defendants will be dismissed.

### C. Claims Against the Town Defendants

The Town Defendants raise some initial arguments as to which parties potentially can be proper defendants in this type of action. They contend that, to the extent Plaintiffs intended to sue "the Commissioners of the Town of Elkton" as an entity, that this entity is not an entity capable of being sued. Under §C2-1 of the Elkton Town Charter, only the "Town of Elkton" has the power to sue and be sued. The Town Defendants also note that, to the extent each Commissioner is sued in his or her official capacity, this is, in reality, a suit against the municipality. They make the same observation regarding the official capacity claims against Mayor Fisona and Chief Ryan.

Plaintiffs concede that "the Commissioners of the Town of Elkton," as an entity, cannot be sued but suggest that it was their intent to sue the individual Commissioners - Charles Givens, Mary Jablonski, Earl Piner, and Charles Hicks - in their individual and official capacities. Plaintiffs also concede that official capacity suits cannot be brought against any of these individuals. They contend, however, that since they were filing individual capacity claims against these same Defendants

12

"in the interest of simplifying their Complaint, it made more sense to bring claims against those Defendants in their individual and official capacities, with the understanding that the official capacities claims would be treated as claims against the Town of Elkton, than to bring individual claims against those Defendants and separate claims against the Town of Elkton." Opp'n at 12.

It is difficult to understand the "simplicity" of Plaintiffs' decision to specifically exclude a named Defendant, the Town of Elkton, from several counts and then specifically include claims against other Defendants in those same counts, knowing that those included claims would be treated as claims against the Town of Elkton. Regardless, the official capacity suits against the individual Town Defendants must be dismissed and the Court will treat those claims as claims brought against the Town of Elkton. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

To be viable, the claims against the Town of Elkton as well as the claims against the individual Town Defendants in their individual capacities all require a similar showing of some prior pattern of the unlawful killing of pets by officers of the

Elkton Police Department. As to the Monell claim against the Town of Elkton (Count 1), Plaintiffs must show the existence of an official policy or custom that is fairly attributable to the municipality and that was the proximate cause of the constitutional violation.[4] Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). While Plaintiffs allege that individual police officers "seem to have joined the Cecil County SPCA" in the sadistic killing of pets, Compl. ¶ 5, the Complaint provides no factual support for the conclusion that anyone in a policymaking position for the Town of Elkton has adopted the killing of pets as an official policy. Thus, Plaintiffs must point to some "custom or usage" of the municipality to support their Monell claim. Such a "custom or usage" "may be found in persistent and widespread . . . practices of [municipal] officials [which,] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) (citations omitted). Generally, however, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell unless proof of the incident

---

[4] The constitutional violations alleged include the excessive use of force (the unreasonable firing by John Doe 1 and John Doe 2 in the direction of Dennis and Gladys), the unlawful seizure and forfeiture of Property (the death of Shiloh) and the violation of Plaintiffs' due process rights (depriving Nakia McCourry and Kenny Bedwell of Shiloh without due process).

14

includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

The establishment of supervisor liability under § 1983 (Count 2) also requires proof of some pattern of prior unconstitutional conduct. To support such a claim, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).[5]  Similarly, to prevail on a claim of negligent hiring,

---

[5] As to Plaintiffs' claims under Articles 24 and 26 of the Maryland Declaration of Rights (Count 8), it has long been established that the protections afforded under those Articles are construed in pari materia with the protections of the Fourth and Fourteenth Amendments. See Parker v. State, 936 A.2d 862, 880 (Md. 2007). Thus, at least as to the issues relevant to the current motions, the proof for a violation of these state constitutional provisions is the same as the proof for a violation of the federal constitution.

Plaintiffs devote most of their discussion of their Maryland Declaration of Rights claims to the assertion that, as

15

training, or supervision (Count 14), a plaintiff must show his or her injury was caused by the tortious conduct of an employee, that the employer knew or should have known by the exercise of diligence and reasonable care that the employee was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the plaintiff's injuries. Bryant v. Better Business Bureau of Greater Maryland, Inc., 923 F. Supp. 720 (D. Md. 1996).

Here, while there are significant allegations in the Complaint regarding other incidents of the abuse and killing of pets by SPCA employees, the only incident alleged in the Complaint involving Elkton police officers is the incident that

---

against John Does 1 and 2, these claims are well pled. See Opp'n at 21. Plaintiffs, without citation to any authority, suggest that "bald allegations of the elements of civil conspiracy are enough to meet the pleading standard under State of Maryland law and survive a motion to dismiss on that issue" and they rely on this conspiracy theory to extend liability to the remaining Defendants. Id. at 22. Whether asserting federal or state claims, however, a complaint in this Court is still subject to federal pleading requirements. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1204 ("The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action."); see also, Grimes v. Dunnigan Civ. No. 13-935, 2013 WL 3353739 at *1 (D. Md. July 2, 2013) (applying the Iqbal/Twombly standard to state law claims in a diversity action). Under federal pleading standards, bald allegations are clearly insufficient.

led to the death of Shiloh. The limited nature of Plaintiffs' allegations in this regard is actually highlighted in Plaintiffs' Opposition. In response to the Town Defendants' observation that the Complaint provides no factual support for Plaintiffs' Monell claims, Plaintiffs respond, "[t]he factual detail provided in the Plaintiffs' Complaint is anything but sketchy. In fact, Plaintiffs have provided very specific factual details surrounding the shooting of Shiloh, and very specific allegations as to how the Town Defendants are liable for the incident." Opp'n at 17 (emphasis added). Allegations related to this single incident, however, do not help establish a Monell claim, nor do they do anything to establish that the Town Defendants would have had actual or constructive knowledge that the police officers would engage in such conduct.[6]

Here, Plaintiffs allege a single, albeit tragic, incident in which two Elkton police officers shot a pet. Mimicking the elements of a Monell claim, they further allege that the Town of

---

[6] The only other allegation related to the conduct of officers of the Elkton Police Department is a general allegation that, "upon information and belief," the Town Defendants "received complaints about the conduct of the police officers with the Elkton Police Department . . . or in the exercise of due diligence would have perceived that the police officers, especially those named in the Complaint, had exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to civilians like the Plaintiffs." Compl. ¶ 89. Plaintiffs provide no information about the nature of these alleged complaints, nor any clue as to what the Town Defendants would have discovered through the exercise of due diligence.

Elkton has adopted a policy, practice, custom, or pattern of using excessive force against domestic animals, but provide no factual support for those formulaic conclusions.  They assert that the Town Defendants knew or should have known that these officers would engage in such conduct, but the Complaint is devoid of a factual basis for that assertion as well.  Under the federal pleading standards set forth above, the Court finds that the claims against the Town Defendants must be dismissed.

## IV. CONCLUSION

For the above stated reasons, the Court concludes that the motions to dismiss filed by the SPCA Defendant and the Town Defendants should be granted.  A separate order will issue.

```
                          _____/s/_____
                          William M. Nickerson
                          Senior United States District Judge
```

DATED: October 22, 2013