In the

# United States District Court

# for the District of Maryland

## No. 12-cv-01839

### Nakia McCourry, *et al.*

*Plaintiffs*

vs.

### Town of Elkton, *et al.*

*Defendants*

## OPPOSITION TO MOTION TO DISMISS

*Charles H. Edwards IV*
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiffs*

## INTRODUCTION

### *"Only a punk would hurt a cat or dog."*

- *Show Your Soft Side*

The *Show Your Soft Side* campaign was designed to show Marylanders that hurting animals is "anything but cool." The campaign features "tough guys" demonstrating their "soft spot" for dogs and cats. As demonstrated in the Plaintiffs' Complaint and argued more fully in this Memorandum of Law, the Defendants' actions towards the Plaintiffs and their dog were not only "anything but cool," but also illegal and unconstitutional.

The Elkton Police Department did not damage a piece of furniture. Instead, they shot, hurt, and killed a beloved dog - a living, breathing, caring creature, without just cause, reason, or excuse. They acted in complete disregard for the life of Shiloh and in knowing violation of the Plaintiffs' constitutional rights.

The facts leading up to and surrounding the October 15, 2011, vicious killing of Shiloh, a three-year-old pit bull owned by Plaintiff Nakia McCourry and Plaintiff Kenny Bedwell, indisputably demonstrate that the Defendants, individually and in concert, acted with malicious intent and ill-will to violate the Plaintiffs' rights arising under federal and State of Maryland law, *inter alia*, by failing to intercede to prevent such violations, using unreasonable and excessive force, unlawfully seizing property, committing and conspiring to commit assault and battery, trespassing and conspiring to trespass, converting and conspiring to convert property, failing to warn and/or protect the Plaintiffs against the hazards the Defendants themselves created, and intentionally inflicting emotional distress when, without cause, justification, or excuse, two police officers with the Elkton Police Department drew .45 caliber Sig Sauer handguns and shot Shiloh, threatening to take the lives of Plaintiffs Dennis Bedwell, Gladys Medina and Lisa Lucas, who were in the direct line of fire, and continuing to shoot Shiloh even as Dennis held his lifeless body in his arms.

*PROCEDURAL POSTURE*

The Plaintiffs' Complaint sets forth seventeen counts, under which the Plaintiffs seek $5,000,000 in compensatory damages from the Defendants, jointly and severally, and punitive damages against the Defendants, jointly and severally, in an amount that will deter their egregious conduct in the future. Those counts and the Defendants against whom they are brought are:

| | |
|---|---|
| Count I | Violations of 42 U.S.C. § 1983, based on a *Monell* claim of municipal liability, against the Town of Elkton; |
| Count II | Violations of 42 U.S.C. § 1983, based on Fourth and Fourteenth Amendment supervisory violations, against the Commissioners, the Mayor, the Chief of Police, and Richard and Jane Roes 1-20; |
| Count III | Violations of 42 U.S.C. § 1983, based on Fourth and Fourteenth Amendment claims of failure to intercede and prevent the violation of constitutional rights, against all the Defendants except the Town of Elkton; |
| Count IV | Violations of 42 U.S.C. § 1983, based on Fourth and Fourteenth Amendment claims of excessive force, against all the Defendants except the Town of Elkton; |
| Count V | Violations of 42 U.S.C. § 1983, based on Fourth and Fourteenth Amendment, based on claims that there were seizures and forfeitures of property, against all the Defendants except the Town of Elkton; |
| Count VI | Violations of 42 U.S.C. § 1983, based on Fifth and Fourteenth Amendment claims that the Plaintiffs' substantive due process rights were violated, against all Defendants except the Town of Elkton; |
| Count VII | Violations of 42 U.S.C. § 1983, based on Fifth and Fourteenth Amendment claims that the Plaintiffs' procedural due process rights were violated, against all Defendants except the Town of Elkton; |
| Count VIII | Violations of Articles Twenty Four and Twenty Six of the Maryland Declaration of Rights, against all Defendants except the Town of Elkton; |
| Count IX | State of Maryland claims of assault and battery, against all Defendants except the Town of Elkton; |
| Count X | State of Maryland claim of trespass to chattel, against all Defendants except the Town of Elkton; |

| | |
|---|---|
| Count XI | State of Maryland claim of conversion, against all Defendants except the Town of Elkton; |
| Count XII | State of Maryland claim of intentional infliction of emotional distress, against all Defendants except the Town of Elkton; |
| Count XIII | State of Maryland claim of negligence, against all Defendants except the Town of Elkton; |
| Count XIV | State of Maryland claim of negligent hiring, training, supervision, discipline, and retention, against the Commissioners, the Mayor, the Chief of Police, Richard and Jane Roes 1-20, the Cecil County SPCA, and the Director of the Cecil County SPCA; |
| Count XV | State of Maryland claim of gross negligence, against all Defendants except the Town of Elkton; |
| Count XVI | State of Maryland claim of negligent failure to warn and protect against hazard created by Co-Defendants, against all Defendants except the Town of Elkton; |
| Count XVII | State of Maryland claim of *respondeat superior*, against the Cecil County SPCA. |

In May 2013, Defendants Joseph Fisona, William Ryan, the Commissioners of the Town of Elkton, the Town of Elkton, Jean Deeming, Jerry Hawkins, and the Cecil County SPCA, Inc. moved to dismiss the Plaintiffs' Complaint. On October 22, 2013, the Court (the Honorable William Nickerson presiding) dismissed with prejudice the entirety of the Plaintiffs' claims as to the aforementioned Defendants. The Court, however, left undisturbed the claims advanced against the remaining Defendants. The Plaintiffs, thereafter, amended their Complaint by interlineation to reflect that John Doe 1 was being designated as Officer Humphrey and John Doe 2 was being designated as Officer Murphy. The Defendants' attorney, Matthew Peter, accepted service on behalf of the aforementioned officers and filed a Motion to Dismiss on behalf of Corporal Jason Hoffman and Officer Sean Murphy. It should be noted, that while the Defendants' attorney has accepted service on behalf of the recently designated officers, the Motion to Dismiss is on behalf of Officer Murphy and a Corporal Jason Hoffman. Presumably the Defendants' attorney is in possession of some document that clarifies the spelling of the Defendant designated by the Plaintiffs as "Officer Humphrey."

The Defendants' Motion to Dismiss leaves undisturbed: (1) the excessive force claims filed by Dennis Bedwell (Counts IV and VIII); (2) the unlawful seizure claim (Count V); (3) the trespass to chattels claim (Count X); (4) the conversion claim (Count XI); (5) the intentional

infliction of emotional distress claim except as to Lisa Lucas (Count XII); (6) the negligence claim except as to Lisa Lucas (Count XIII); and (7) the gross negligence claim except as to Lisa Lucas (Count XV).

The Plaintiffs consent to the dismissal without prejudice of: (1) the claims against the Defendants in their official capacities and claims of a conspiracy; (2) Count III (failure to intercede to prevent a violation of constitutional rights); (3) Count IV (excessive force)  as to all Plaintiffs except Dennis Bedwell; (4) Count VI and Count VII (due process claims); (5) Count VIII (State of Maryland Declaration of Rights claim) as to all Plaintiffs except Dennis Bedwell; (6) Count IX (assault and battery) as to Nakia McCourry and Kenny Bedwell as to both assault and battery and Gladys Medina and Lisa Lucas only as to the Plaintiffs' claims of a battery; and (7) XVI (negligent failure to warn and protect against a hazard). The Defendants' Motion to Dismiss, however, should be denied in its entirety as to the Plaintiffs' remaining claims based on the grounds and authorities set forth hereinafter.

### STATEMENT OF WELL-PLED FACTS

The well-pled allegations in the Plaintiffs' Complaint are to be accepted as true by this Honorable Court for the purposes of ruling on the Defendants' Motions to Dismiss. Shiloh was a three-year-old pit bull owned by Nakia and Kenny (*hereinafter*, the "Family Plaintiffs"), who have four children, Mikaylah, seven-years-old, Dominick, four-years-old, Jaiden, four-years-old, and Brooklyn, newly born (*hereinafter*, collectively the "Family").[1] The Family lives at 172 Hollingsworth Manor, Elkton, Maryland 21921 (*hereinafter*, the "Residence").[2] Dennis is Kenny's brother and, at all times herein pertinent, lived on a street adjacent to the Family's Residence.[3] Finally, at all times herein pertinent, Lisa and Gladys were the Family's neighbors.[4]

Shiloh had been with the Family since he was only a few weeks old, he had never bitten or attacked anyone, and was known in the Family's community as a happy, warm hearted, loveable, and well-trained pet, companion, and member of the Family.[5]

On October 15, 2011, the day Shiloh, Dennis, and Gladys were fired upon by two police officers without cause justification or excuse (*hereinafter*, the "Incident"), a neighbor's dog broke through a fence surrounding the Family's backyard, where Shiloh was awaiting the Family's return from work and school.[6]  There was a minor scuffle between the two dogs, though no harm or damage was sustained by either dog, and the neighbor's dog quickly left the yard and was not seen again.[7] Shiloh remained safely in the Family's backyard, and Lisa repaired the hole in the fence.[8] At some point, however, another neighbor called the Elkton Police Department to report what was, to the Defendants, an unconfirmed scuffle between two dogs that had already been resolved.[9]

Long after the minor scuffle had ended, the neighbor's dog had disappeared, and Shiloh still remained safely in the Family's backyard, two Elkton Police Department officers, Officer Humphrey and Officer Murphy (*hereinafter*, the "Officers") arrived at the Residence.[10] The Officers began speaking with Lisa in the street in front of the Residence while Dennis and

---

[1] Complaint, ¶36-37.
[2] Complaint, ¶36.
[3] Complaint, ¶38.
[4] Complaint, ¶39.
[5] Complaint, ¶37.
[6] Complaint, ¶47-49.
[7] *Id.*
[8] Complaint, ¶50.
[9] Complaint, ¶51.
[10] Complaint, ¶52.

Gladys talked amongst themselves in the front yard.[11]

While the Officers were speaking with Lisa, Shiloh managed to get out of the Family's backyard and began to walk toward the front yard where Dennis and Gladys were located.[12] Shiloh seemed very happy, wagging his tail as he immediately headed towards Dennis, and was certainly not acting in an aggressive manner or in any way that could be construed as dangerous to the people around him.[13]

However, while Shiloh was en route to Dennis, Officer Humphrey called out to Shiloh and, in response to Officer Humphrey's  purposeful interaction with him, Shiloh began heading towards Officer Humphrey, seemingly as Officer Humphrey had intended when he called out to Shiloh.[14] Shiloh approached Officer Humphrey as expected, with no objection by Officer Humphrey, and happily sniffed one of Officer Humphrey's pant-legs, never making contact.[15]

Dennis called out to Shiloh, who returned to his original course and began walking towards Dennis, again in accordance with and in obedience to Dennis' call and, again, in a friendly manner that could in no way be construed as dangerous to the people around him.[16]

Suddenly, what had been merely a friendly interaction between the Officers, Lisa, Dennis, Gladys, and Shiloh turned into a needlessly tense, standoff-like emergency when Officer Murphy, with no cause, justification, or excuse, drew his .45 caliber Sig Sauer handgun and stated "you better get your dog."[17] Without any time for anyone to respond or object to this absurd request, given that Shiloh was in the Family's front yard and was walking directly toward Dennis in a manner that could in no way be construed as aggressive or dangerous to anyone around the Residence, Officer Murphy began shooting at Shiloh, despite the fact that Dennis and Gladys were directly in the line of fire and there was no cause, justification, or excuse for any exercise of force or even the threat of force.[18] Officer Humphrey immediately joined in.[19]

Shiloh was hit multiple times and with blood squirting out of his front leg he collapsed in front of Dennis, who immediately scooped up the Family's beloved animal and joined in the pleas from onlookers who had assembled in the street for the Officers to cease firing their

---

[11] Complaint, ¶52-53.
[12] Complaint, ¶52.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Complaint, ¶53.
[17] *Id.*
[18] *Id.*
[19] *Id.*

weapons.[20] Ignoring reason and the pleas of all who were bearing witness to this horrific event, the Officers again opened fire at Shiloh, who was still being held in Dennis' arms.[21] This second round of firing at Shiloh was not only as entirely unnecessary as the first round of firing at the poor, and now lifeless, Shiloh, but it put Dennis, who felt the impact of every bullet as it struck Shiloh, at an even more extreme risk of being hit by one of the bullets fired.[22] Furthermore, Gladys was still standing extremely close to Dennis, as she had been throughout the incident, and the Officers's firing at Shiloh while he was being held by Dennis made Gladys terrified, rightfully so, that being in the line of fire, she would be the next target of their frivolous, unnecessary, and deadly gunfire.[23]

The Officers finally ceased firing at Shiloh and endangering the lives of Plaintiffs Dennis, Gladys, and Lisa—note that the Officers' bursts of gunfire so close to, and often directed at, the Plaintiffs themselves endangered the lives of innocent civilians far more than a pit bull *ever* could.

The Officers' supervisor (*hereinafter*, "Richard Roe 1") arrived at the Residence sometime after the shooting had taken place.[24] Richard Roe 1 attempted to interrogate Dennis, now covered in blood and suffering from the shock of being shot at and holding Shiloh's lifeless body.[25] Ignoring Dennis' request for a minute to collect and compose himself, Richard Roe 1 stated that Dennis would be arrested if he did not tell Richard Roe 1 what he knew about the incident immediately and, in shock, covered and blood, and not understanding why this was happening, Dennis complied with this aggressive and unlawful threat, reporting exactly what had happened.[26]

When the Family arrived home, they could not have imagined the tragedy that had befallen the other Plaintiffs and poor Shiloh. And despite the Plaintiffs' efforts to conceal the horrific sight from the Family's children, Jaiden saw Dennis covered in blood and Shiloh's dead body.[27]

For the forgoing reasons and for the reasons described more fully herein this Memorandum of Law, it is clear that the Plaintiffs have set forth cognizable claims, and that this Honorable Court should deny the Defendants' Motions as to all relief the requested.

---

[20] Complaint, ¶54.
[21] Complaint, ¶54.
[22] Complaint, ¶54-55.
[23] Complaint, ¶56.
[24] Complaint, ¶58.
[25] Complaint, ¶57-58.
[26] Complaint, ¶63.
[27] Complaint, ¶64.

*STANDARD OF REVIEW*

In ruling on the Defendants' Motion to Dismiss, the Court must accept the allegations in the Plaintiffs' Complaint as true, and dismiss the case only if "it appears beyond doubt that the [P]laintiff[s] can prove no set of facts to support their allegations."[28] "[B]efore the reception of any evidence either by affidavit or admissions, its task is a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[29]

In an action for relief pursuant to 42 U.S.C. § 1983, to survive a defendant's motion to dismiss, a plaintiff need only provide "a short and plain statement of the claim showing that [they are] entitled to relief."[30] This Court may dismiss the Plaintiffs' Complaint only if it is clear that no relief could be granted under any set of facts which could be proved consistent with the stated allegations.[31]

More specifically, Federal Rule of Civil Procedure 8 merely requires "notice pleading."[32] Though at times various courts have attempted to apply a higher standard, the Fourth Circuit has time and time again reiterated the notice pleading standard:

> In our post-*Swierkiewicz* case law, we have hewed closely to the Supreme Court's instruction that 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests…[A] complaint meets Rule 8's requirements if, in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis…[T]he sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.[33]

Moreover, in the context of the numerous civil rights violations contained in the Plaintiffs' Complaint, this Court "must be especially solicitous of the wrongs alleged and must *not* dismiss the complaint unless it appears to a certainty that the plaintiff[s] would not be

---

[28] *Richmond, F'burg & Pot. RR Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993).

[29] *Sheuer v. Rhodes,* 416 U.C. 232, 236 (1974).

[30] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also*, *Swierkiewicz v. Sorema*m 534 U.S. 506, 512 (2002)("Complaints in [§ 1983] cases, as in most others, must satisfy only the simple requirements of Rule 8(a).")

[31] *Haines v. Kerner*, 404 U.S. 579 (1972).

[32] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160 (1993); *Swierkiewicz v. Soreman NAS*, 534 U.S. 506, 512, 122 S.Ct. 192 (2002).

[33] *Chao v. Wood, Inc.*, 415 F.3d 342, 347-9 (4th Cir. 2005).

entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."[34]

Additionally, this Court is not required to conduct a more stringent review than is required pursuant to the Supreme Court's decision in *Bell Atlantic Corp.* v. *Twombly*.[35] *Twombly* turned on a complaint's "formulaic recitation of the elements of a cause of action," with no supporting factual allegations whatsoever, which is quite the opposite of the Plaintiffs' Complaint here, which consists of 226 paragraphs and alleges facts that are more than sufficient to support the Plaintiffs' causes of action alleged therein, some is painstaking detail.[36] Moreover, in holding that the *Twombly* plaintiff had failed to state a "plausible" claim, the Supreme Court expressly cautioned that:

> ➤ it was not altering the traditional "notice pleading" standards of Rule 8(a)(2) of the Federal Rules of Civil procedure;

> ➤ "once a claim has been stated adequately [under 8(a)(2)], it may be supported by showing any set of facts consistent with the allegations in the complaint";

> ➤ "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage"; and

> ➤ a motion to dismiss may not be granted "based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.[37]

Ultimately, *Twombly* stands for the proposition that "Rule 8(a)(2) has it right."[38]

To the extent that it can be argued that this case presents a theory of liability against the Defendants that has not been fully tested, it should not be tested on the pleadings, but after sufficient development of the record.[39]

---

[34] *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(internal quotation marks omitted).
[35] 127 S. Ct. 1955 (2007).
[36] *Id.*
[37]  *Twombly*, 127 S. Ct. at 1959, 1964-65, 1969 & n.8, 1974.
[38] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008)(citation omitted); *see also Erickson*, 127 S. Ct. at 2200 ("Specific facts are not necessary [under Rule 8(a)(2)]; the [complaint] need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." (ellipsis in original; internal quotation marks omitted)); *Vill. Of Riverdale v. 138th St. Joint Venture,* 527 F. Supp. 2d 760, 766 (N.D. Ill. 2007) ("*Twombly*…merely instruct[s] that at some point the factual detail in the complaint may be so sketchy that the complaint does not provide [Rule 8 notice]."(internal quotations omitted)).
[39] *See Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) and

This Opposition is filed because the Defendants seek to dismiss the Plaintiffs' Complaint. As the Defendants are well aware, such relief is a drastic and extreme result. Further, dismissal with prejudice is appropriate only if the Plaintiffs' Complaint does not outline a viable claim.[40] However, and more importantly, a motion to dismiss claims of civil rights violations may only be denied when the legal standard is carefully applied and it is shown beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.[41]

In the event that it can be shown beyond doubt that the Plaintiffs' Complaint does not allege sufficient facts in support of their claims that would entitle them to relief, amendments should be permitted in the interest of proceeding in an appropriate manner with litigation.[42]

In addition, the Defendants disregard the fact that the Plaintiffs' allegations must be accepted as true at this stage by raising arguments that either challenge, mischaracterize, or disregard the facts alleged in the Plaintiffs' Complaint. (Examples are identified throughout this Opposition.) Each of the Defendants' arguments must be rejected at this stage because "the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it."[43] The issue presented on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[44]

Under the Federal Court's general approach to pleadings, the Plaintiffs can prove facts to support all the allegations in their Complaint, making dismissal inappropriate. Thus, the

---

*McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("the court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1357); *Kirksey v. R.J. Reynolds*, 168 F.3d 1039, 1040-1 (7th Cir. 1999) ("a claim should not be dismissed out of hand just because it is so novel that it cannot be fitted into an existing legal category"); *Baker v. Cuomo*, 58 F.3d 814 (2nd Cir. 1995), vacated and reversed on other grounds, 85 F.3d 919; *Santara Va. Beach Gen. Hosp. v. LeBeau*. 182 F.Supp.2d 518 (E.D. Va. 2002); *Logiodice v. Trustees of Maine Centr. Inst.*,135 F.Supp.2d 199, 205-6 (D. Me. 2001); *Wadja v. R.J. Reynolds Tobacco Co.*, 103 F.Supp.2d 29, 36 (D. Mass. 2000); *Official Comm. Of Unsecured Creditors of Buckhead Amm. Corp. v. Reliance Capital Group. Inc.*, 178 B.R. 956, 961 (D. Del. 1994); *JES Props. Inc. v. USA Equestrian. Inc.*, 2003 U.S. Dist. LEXIS 20633, *26-27 (M.D. Fl. 2003); *Mayes v. Office Depot. Inc.*, 2002 U.S. Dist. LEXIS 27063, *8 (W.D. La. 2002).

[40] *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648 (7th Cir. 1984).

[41] *Alie v. NYNEX Corp.,* 158 F.R.D. 239 (E.D.N.Y. 1994).

[42] *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2nd Cir. 1988) (dismissal for failure to meet pleading requirements ordinarily should be accompanied by leave to file an amended complaint); *Washington v. T.G.&Y. Stores Co.*, 324 F.Supp. 849 (W.D.La. 1971) (allowing amended complaint to correct a misnomer); and *Stith v. Manor Baking Co.*, 418 F.Supp. 150, 156-157 (W.D.Mo. 1976) (if allegations are not sufficient, "complaint is dismissed without prejudice to amend").

[43] *Mabe*, 367 F. Supp. 2d at 867 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

[44] *Id.*

Defendants' Motion to Dismiss should be denied. However, in the unlikely event that this Honorable Court finds that dismissal is warranted, the Plaintiffs should have and respectfully request the opportunity to correct any defects with an amended complaint, which would relate back to their original Complaint.

*ARGUMENT*

**I.      LISA LUCAS IS A PROPER PARTY.**

The Defendants argue that the Complaint has not stated any facts or made any allegations that provide Lisa with a cause of action that would entitle her to relief. However, upon even the most cursory review of the facts underlying this lawsuit, it is clear that Lisa was intimately involved with the Incident and that, as such, she is certainly entitled, as are the rest of the Plaintiffs, to relief.

Lisa's role in the Incident can be compared very closely to Gladys' role in the Incident. Though Lisa was not standing next to Dennis or Gladys at the time the Defendants unnecessarily and excessively fired their weapons at Shiloh and Dennis, she had immediately prior been speaking with the  Defendants, and was standing countable inches from the Defendants when they began firing their handguns. Simply because the bullets turned out to be fired in the direction of Shiloh, Dennis, and Gladys does not mean that Lisa did not experience enormous amounts of stress during and long after the shooting, stemming from fear for the safety and well-being of Shiloh, Dennis, Gladys, and, moreover, herself. As well, Lisa didn't immediately know if the bullets were directed at her or at Shiloh, Dennis and Gladys, and she did not know if the bullets would subsequently be directed at her as the Defendants were excessively shooting their firearms without explanation, cause, legal justification, or excuse, and it was probable that based on the deranged behavior exhibited by the Officers, that they would focus their attention on Lisa or one of the other Plaintiffs next, eventually firing at her as well.

For the foregoing reasons and the reasons described more fully herein the body of this Opposition, the Plaintiffs respectfully request that Defendants' request to dismiss all of Lisa's claims be denied in its entirety or, in the alternative, should this Honorable Court determine that Lisa's claims are unsubstantiated, the Plaintiffs request that this Honorable Court grant leave to amend their Complaint in the interests of justice and achieving relief for the Plaintiffs where relief is due.

**II.      THE PLAINTIFFS' ASSAULT AND BATTERY CLAIMS ARE COGNIZABLE.**

Although it is often said that assault and battery go together like ham and eggs, two separate torts are involved, each protecting a separate personal interest. The interest in freedom from apprehension of a harmful or offensive contact with a person is protected by an action for assault, and the interest in freedom from intentional and unpermitted contact with a person is protected by an action for battery.

Specifically, "a battery occurs when one intends a harmful or offensive contact with another without that person's consent."[45] A battery may occur through a defendant's direct or indirect contact with the plaintiff.[46] Thus, "one can commit a battery by hitting another person with one's fists or by putting an instrumentality in motion—for example, a bullet fired from a gun—that hits the person."[47]

In this case, the facts in the Plaintiffs' Complaint, viewed most favorably to Dennis, clearly demonstrate that a battery was committed. To be sure, the touching element of a battery includes the intentional setting in motion of anything that touches another or touches something that is connected with or is contact with another.[48] A person can fire a bullet at a person that directly contacts them or fire a bullet that directly contacts a canine companion that is connected or in contact with a person. Thus, the Defendants' contention that there is no liability on the part of the Defendants because "the Plaintiffs do not allege that either Officer had any physical contact with any of them" is indisputably incorrect pursuant to the well-settled Maryland law cited herein.[49]

Additionally, the Defendants' attempt to defeat the Plaintiffs' assault claims with the same argument, that the Defendants did not have any physical contact with the Plaintiffs, similarly misses the mark. To recover under a civil assault theory of liability, a plaintiff must prove that he or she was threatened by the defendant, who possessed the apparent present ability to carry out that threat and that the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm.[50] Thus, the contention that none of the Plaintiffs had any physical contact with the Defendants is not only erroneous, but also irrelevant to a claim of civil assault.

---

[45] *Nelson v. Carroll*, 355 Md. 593, 600, 735 A.2d 1096 (1999) (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965)). See also *Saba v. Darling*, 320 Md. 45, 49, 575 A.2d 1240 (1990) (stating that "[a] battery has been defined as a harmful or offensive contact with a person resulting from an act intended to cause the person such contact").

[46] *Nelson*, 355 Md. at 600, 735 A.2d 1096.

[47] *Hendrix v. Burns*, 205 Md. App. 1, 19 (2012).

[48] *Ghassemieh v. Schafer*, 52 Md. App. 31 (1982).

[49] Defendants' Motion to Dismiss at page 11.

[50] *Lee v. Pfeifer,* 916 F. Supp. 501 (1996).

## *CONCLUSION*

For the forgoing reasons and for the reasons described more fully herein the body of this Opposition to the Defendants' Motions to Dismiss, it is clear that the Plaintiffs have adequately pled all claims against the Defendants that have not been voluntarily dismissed, and that as such, this Honorable Court should deny the Defendants' Motions as to all remaining relief requested.


Respectfully Submitted,


**LAW OFFICE OF BARRY R. GLAZER, P.C.**


By: _____/s/_____
      Charles H. Edwards IV
      Federal Bar No.: 29977
      P.O. Box 27166
      1010 Light Street
      Baltimore, Maryland 21230
      Phone:  (410) 547-8568
      Fax:     (410) 547-0036
      charles.edwards@robinhoodlawyers.com

      *Counsel for the Plaintiffs*

### *REQUEST FOR HEARING*

The Plaintiffs request a hearing in this matter on all issues addressed herein the foregoing Opposition to the Defendants' Motion to Dismiss.


_____/s/_____

Charles H. Edwards IV

### *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that, this 20th Day of March 2014, a copy of the foregoing Opposition to the Defendants' Motion to Dismiss and proposed order were served upon all counsel of record through the Court's electronic filing system.


_____ /s/_____

Charles H. Edwards IV

| | | |
|---|---|---|
| **NAKIA McCOURRY,** *et al.* | * | **IN THE UNITED STATES** |
| *Plaintiffs,* | * | **DISTRICT COURT FOR** |
| **v.** | * | **THE DISTRICT OF MARYLAND** |
| **TOWN OF ELKTON,** *et al.* | * | **(Northern Division)** |
| *Defendants.* | * | **CASE NO.: 1:12-cv-01839-WMN** |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>ORDER</u>

**UPON CONSIDERATION** of the Defendants' Motion to Dismiss, the Plaintiffs' Opposition to the Defendants' Motions to Dismiss, the accompanying documents and evidence submitted in support thereof, and the points and authorities contained therein, it is therefore this _____ Day of _____ 2014,

**ORDERED,** that this Honorable Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' Complaint.

**SO ORDERED.**

_____

Judge, U.S. District Court for the
District of Maryland

cc:     James S. Aist

        Matthew D. Peter

        Charles H. Edwards IV